## PAUL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10984.

United States Court of Appeals
Third Circuit.

Argued May 19, 1953.

Decided July 30, 1953.

Leonard Shapiro, Pittsburgh, Pa., for petitioner.

Harry Baum, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before MARIS, STALEY and HASTIE, Circuit Judges.

STALEY, Circuit Judge.

We must decide whether a taxpayer who is in the business of holding rental property for investment purposes and who has a partially completed apartment building in May which is later completed and sold for a gain in November may treat the entire gain or any part thereof as a long-term capital gain under Section 117(j) of the Internal Revenue Code, 26 U.S.C. § 117(j). The Commissioner and the Tax Court have

said that he cannot.[1] For the reasons that follow, we hold that that portion of the gain which is properly allocable to that part of the building which was erected more than six months before the sale may be given long-term capital gain treatment.

The important facts were stipulated and may be summarized as follows: Petitioner, M. A. Paul, is engaged principally in the building-supplies business. In 1944, he bought a lot in Pittsburgh, Pa., intending to erect thereon an apartment building and to hold it as investment property. On May 10, 1946, the building was only partially completed. When finally completed, the total construction cost was $98,018.13. Having received an offer too attractive to refuse, petitioner sold the lot and building on November 11, 1946, realizing a gain of $77,021.62. In his income tax return for the taxable year 1946, he reported the entire gain from the sale as a long-term capital gain, including only 50 per cent of the gain in his gross income. The Commissioner allocated $10,691.71 of the gain to the sale of the land and allowed that amount to be treated as a long-term capital gain because it was held for more than six months.[2] He attributed the remainder to the sale of the building, treating it as ordinary income and, therefore, determined a deficiency.

The building was sold on November 11, 1946. More than six months before that date, or May 10, 1946, the building was only partially erected. The Tax Court, sustaining the Commissioner, held that, since the asset sold was a completed building and not a partially erected one, Section 117(j) was not satisfied in that the completed building was not held for more than six months prior to the sale.

Section 117(j) is as follows:

"(j) Gains and losses from involuntary conversion and from the sale or exchange of certain property used in the trade or business

"(1) Definition of property used in the trade or business. For the pur-

poses of this subsection, the term 'property used in the trade or business' means property used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23($l$), held for more than 6 months, and real property used in the trade or business, held for more than 6 months, which is not (A) property of a kind which would properly be includible in the inventory of the taxpayer if on hand at the close of the taxable year, or (B) property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. * * *

"(2) General rule. If, during the taxable year, the recognized gains upon sales or exchanges of property used in the trade or business, * * * exceed the recognized losses from such sales, exchanges, and conversions, such gains and losses shall be considered as gains and losses from sales or exchanges of capital assets held for more than 6 months. If such gains do not exceed such losses, such gains and losses shall not be considered as gains and losses from sales or exchanges of capital assets. * * *" 26 U.S.C. § 117(j).

The parties do not dispute that the property involved here is such as is contemplated by Section 117(j), the only question being whether, in compliance with that section, it was held for more than six months.

█ In computing the holding period to determine whether gain on the sale of an asset merits capital gain treatment, we must look to the date of acquisition. "In common understanding, to hold property is to own it. In order to own or hold one must acquire. The date of acquisition is, then, that from which to compute the duration of ownership or the length of holding." McFeely v. Commissioner of Internal Revenue, 1935, 296 U.S. 102, 107, 56 S.Ct. 54, 56, 80 L.Ed. 83; Helvering v. San Joaquin Fruit & Investment Co., 1936, 297 U.S. 496, 499, 56 S.Ct. 569, 80 L.Ed.

---

1. The decision of the Tax Court appears in 1952, 18 T.C. 601.

2. Petitioner raises no question as to this allocation.

824. That must be our guiding principle in passing upon the parties' contentions.

Petitioner presents three arguments, each sufficient in his view to reverse the Tax Court.

He says, first, that the holding period for the building began to run from the time he became contractually bound to his materialmen and subcontractors, because he then had a right to acquire the building. This is based, however, upon a misconception of the asset sold. He did not sell the mere right to acquire the building, but the building itself. What is owned by the obligee of an executory contract to erect a building is a far different thing from the building itself. The conditional right to acquire the building would not be enough to start the holding period running, even in the case of an already completed building. Helvering v. San Joaquin Fruit & Investment Co.; supra; Howell v. Commissioner of Internal Revenue, 5 Cir., 140 F.2d 765, certiorari denied, 1944, 322 U.S. 735, 64 S.Ct. 1048, 88 L.Ed. 1569. Moreover, the record shows that as of six months before the sale, petitioner had entered into contracts totaling only $59,000 and had paid out only $28,000 of a total construction cost of about $98,000. Hence, even on petitioner's own theory—that the right to acquire ownership in the future is the same as immediate ownership for purposes of starting the holding period—the right did not arise more than six months before the sale.

▮ Next, we are told that the holding period for the building is the same as that for the land since, by the law of Pennsylvania, the building, for some purposes, became part of the land by virtue of the doctrine of fixtures. That concept was relied upon in the growing-crop cases.[3] Those cases, however, are no longer law since Watson v. Commissioner of Internal Revenue, 1953, 345 U.S. 544, 73 S.Ct. 848. There the Supreme Court held that the immature crop of oranges, passing with the sale of the land and trees, was held for sale to customers in the ordinary course of the seller's business and, thus, the gain allocable to the oranges did not come within Section 117(j). This made it unnecessary to decide whether the unripe oranges were held for more than six months. Furthermore, the majority did not pass upon the propriety of following the state law of fixtures, saying that, no matter whether the immature oranges were realty or personalty, their proper tax treatment was a matter of federal law. We are satisfied, however, that the argument made by petitioner here was adequately disposed of in Dunigan v. Burnet, 1933, 62 App.D.C. 221, 66 F.2d 201. Under the then applicable revenue act, to be a capital asset, the item had to be, among other things, held for more than two years. Improved lots were sold more than two years after the lots were acquired but less than two years after houses were built on them. The Commissioner allocated the gain between that attributable to the land and that attributable to the houses and treated the latter as ordinary income. It was argued, in opposition, that the common law rule of fixtures made the houses part of the land and, therefore, the houses were held for more than two years. This was rejected, the court stating that in many questions of taxation land and buildings are treated separately and that to apply the law of fixtures would be to substitute a legal fiction where actuality should be controlling. We agree. Land is not subject to the allowance for depreciation provided in Section 23(l) of the Internal Revenue Code, 26 U.S.C. § 23(l)[4], while buildings are. Furthermore, the fact that local law may treat land and buildings as merged for some purposes does not help us here. The federal revenue laws are to be construed in the light of their general purpose "so as to give a uniform application to a nation-wide scheme of taxation." Burnet v. Harmel, 1932, 287 U.S. 103, 110,

---

3. Owen v. Commissioner of Internal Revenue, 5 Cir.,1951, 192 F.2d 1006; McCoy v. Commissioner of Internal Revenue, 10 Cir.,1951, 192 F.2d 486; Cole v. Smyth, D.C.N.D.Cal.1951, 96 F.Supp. 745; Irrgang v. Fahs, D.C.S.D.Fla.1950, 94 F. Supp. 206.

4. See U.S.Treas.Reg. 111 (1943), 29 Code Fed.Regs. § 29.23(l)–2 (1949).

53 S.Ct. 74, 77 L.Ed. 199; United States v. Pelzer, 1941, 312 U.S. 399, 402, 61 S.Ct. 659, 85 L.Ed. 913; Lyeth v. Hoey, 1938, 305 U.S. 188, 194, 59 S.Ct. 155, 83 L.Ed. 119. All those matters aside, however, we are not interested in whether this building is realty or personalty. No matter what one may call it, we want to know how long it was held. The law can do many things by the use of fictions, but it would be absurd to say that it can allow a man to acquire a building in 1944 which did not come into existence until 1946. The boast of the law of taxation is that it deals with realities. The least that reality requires here is that we hold that a building cannot be acquired before it exists.

Passing to petitioner's last point, we think it makes sense and requires an allocation. Should he be unsuccessful in securing long-term capital gain treatment for the entire gain, he argues that we must allow such treatment at least for that portion of the gain allocable to that part of the total cost expended more than six months before the sale. As stated, we think an allocation is the proper solution here but not on the formula advanced by petitioner. As of May 10, 1946, he might have paid out the total cost of construction or he might have paid out nothing. We are not concerned about what he may have expended or accrued as of that date but in the cost of that part of the building which was erected as of that date. Since that information is not in the record, it will be necessary to remand the cause so that the Tax Court can take evidence on the point.

The Commissioner objects to an allocation, arguing that the asset that was sold and upon which the gain was realized was the whole building and not a part of it. That is true, but it is obvious that part of what was sold was held for more than six months. Thus, that part satisfies all the requirements of Section 117(j). Allocation here is practical and fair. We see no reason to make this an all-or-nothing proposition. It is certainly realistic to recognize that there are gradations between no building and a completed building, and we think it proper that those gradations have tax significance. The Commissioner says that allocation according to the formula we adopt would be difficult of administration. This objection, however, goes to a matter of proof. It may well be that petitioner's evidence will be too vague to satisfy the Tax Court. In that event, the result will be the same as when there is a failure of proof in any other law suit. The party who has the burden of persuasion will lose. On this score of difficulty of administration, it may be worth mentioning that, although capital gains provisions have been part of the Code in some form since 1921, neither our research nor that of the parties has disclosed that this precise problem has ever arisen before. Thus, even should we concede that our solution here may call for an intricate allocation, the problem is not likely to recur with such frequency as materially to harass the Commissioner.

The judgment of the Tax Court will be vacated and the cause remanded for proceedings in accordance with this opinion.