ROBERT W. AAGAARD & MARGERY B. AAGAARD, PETITIONERS *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5907–67. Filed April 28, 1971.

*Robert W. Aagaard*, pro se.
*Lewis M. Porter, Jr.*, for the respondent.

IRWIN, *Judge:* The Commissioner determined deficiencies in petitioners' income tax in the amounts of $923.67 and $3,059.68 for the years 1964 and 1965, respectively.

Petitioners did not contest certain determinations in respondent's notice of deficiency. Therefore, the issues for decision are as follows:

(1) Whether petitioners are permitted under section 1031(a) of the Internal Revenue Code of 1954[1] to defer in its entirety the gain realized on their exchange of a four-unit apartment house located on Camden Road, or whether only that portion of the gain allocable to the one unit they used as their residence may be deferred under section 1034(a);

(2) Whether the recognition of the gain realized by petitioners on the sale of an eight-unit apartment house located on Petra Place may be deferred under section 1034;

(3) Whether petitioners are entitled to deduct in full the 1964 real property taxes assessed against property located on Chippewa Drive which they purchased on December 1, 1964; and

(4) Whether petitioner Robert W. Aagaard's investment in Mill Fab, Inc., stock became worthless in 1965.

FINDINGS OF FACT

Some of the facts have been stipulated by the parties. The stipulations, together with the exhibits attached thereto, are incorporated herein by this reference.

Petitioners Robert W. Aagaard (hereinafter sometimes referred to as petitioner) and his wife, Margery B. Aagaard, filed joint Federal

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

income tax returns for the calendar years 1964 and 1965 with the district director of internal revenue, Milwaukee, Wis.

On the date of the filing of the petition and at all times pertinent herein, petitioners resided in Madison, Wis.

Petitioner is an attorney who has been engaged in private practice, primarily real estate law, in Madison since 1959.

The following table contains information with respect to the various properties [2] petitioners owned and occupied during the period 1961 through 1965:

| Location of property | Description | Dates of occupancy |
|---|---|---|
| Camden Road | Four-unit apartment building.[3] | 1961 to Dec. 1, 1963.[4] |
| Petra Place | Eight-unit apartment building.[5] | Dec. 1, 1963, to Dec. 1, 1964. |
| Chippewa Drive | (Does not appear in the record— referred to simply as residence.) | Dec. 1, 1964, through 1965. |

Petitioners acquired the Camden Road property in 1961 for a total cost of $37,832.35. They subsequently made improvements to the building in the total amount of $2,623.32, thereby making their total cost basis $40,455.67

Sometime prior to December 1, 1963, petitioners entered into negotiations for the sale of the Camden Road property with the owners of property located on Pauline Street. On January 30, 1964, they sold them the Camden Road property and received in exchange therefor the Pauline Street property. Moreover, the purchaser assumed petitioners' mortgage of $31,262.91 on the Camden Road property and paid them $800 in cash.[6]

Petitioners reported this transaction on their tax return for 1964 although they did not recognize any gain in connection therewith since the gain was used to reduce the basis of the Pauline Street property. The price of the Pauline Street property was listed on petitioners' 1964 income tax return as $13,900, which is the amount the owner wanted for it. After its acquisition, petitioners used the Pauline Street property exclusively for rental purposes.

---

[2] The various properties referred to herein are all located in Madison and will all be identified by reference to the street names only.

[3] Petitioners occupied one apartment and rented out the other three.

[4] At no time subsequent to Dec. 1, 1963, did petitioners, or any of their family, reoccupy this apartment. However, this vacant unit was rented out by petitioners to a new tenant sometime during the period Dec. 1, 1963, to Jan. 28, 1964.

[5] Petitioners lived in one of the units and leased out five of the remaining seven apartments.

[6] The buyer apparently also paid petitioners $2,337.09 to cover the selling expenses. We arrived at this conclusion because it is the only rational explanation of how petitioners arrived at a sales price of $47,500, on their income tax return for 1964, excluding the $800 cash payment. See fn. 7, *infra*. The computation is as follows:

$31,262.91 (petitioners' mortgage liability)
13,900.00 (value of Pauline Street property as listed on petitioners' tax return)
2,337.09
———————
47,500.00 (sales price)

On April 21, 1964, approximately 3 months after its acquisition, petitioner listed the Pauline Street property for $12,900 with a real estate broker. This listing expired on October 21, 1964, at which time petitioner listed the property with another broker for the same amount. The second listing agreement terminated on February 1, 1965.

At the time of its sale, the accumulated allowable depreciation on the rental portion of the Camden Road property was $1,686.25. However, due to a mathematical error on their 1964 tax return, petitioners only claimed $1,486.25 in depreciation as of the date of sale. Petitioners' computation with respect to the sale of the Camden Road property was as follows:

| | | |
|---|--:|--:|
| Sales price | | $47,500.00 |
| Cost | $40,455.67 | |
| Less: Depreciation | 1,486.25 | |
| Basis | | 38,969.42 |
| Balance | | 8,530.58 |
| Expenses of sale | | 2,337.09 |
| Gain realized on sale of Camden Road property | | 6,193.49 |

They reduced their cost basis in the Pauline Street property by the amount of the gain realized, but unrecognized, as follows:

| | |
|---|--:|
| Basis or price (Pauline Street property) | $13,900.00 |
| Gain on sale (Camden Road property) | 6,193.49 |
| Adjusted basis (Pauline Street property) | 7,706.51 |

Respondent determined that the one apartment unit occupied by petitioners on the Camden Road property constituted the property used by them as their old residence and that this residential portion amounted to only one-fourth of the Camden Road property. He denied petitioners' application of any portion of the gain on the Camden Road property in reduction of the basis of the Pauline Street property. Instead, he determined that out of the total gain, $1,176.81 was attributable to this one-fourth residential interest and could be deferred and used to reduce the basis of the new residence on Chippewa Drive which was acquired by petitioners on December 1, 1964.

Respondent also determined that the balance of the gain, viz, $5,216.68, which was attributable to the remaining three-fourths of the Camden Road property that was used by petitioners as rental property, was to be recognized. His computation of the recognizable and nonrecognizable gain relating to the sale of the Camden Road property was as follows:

| | | Rental—75% (gain recognized) | Personal—25% (gain deferred) |
|---|---|---|---|
| Cost (Camden Road property): | | | |
| Building | $33,532.35 | | |
| Land | 4,300.00 | | |
| Improvements | 2,623.32 | | |
| Total cost | 40,455.67 | | |
| Total cost | 40,455.67 | $30,341.75 | $10,113.92 |
| Total depreciation allowable | | 1,686.25 | None |
| Basis | | 28,655.50 | 10,113.92 |
| Selling price | $47,500.00 | | |
| Expense of sale | (2,337.09) | | |
| Net proceeds | 45,162.91 | 33,872.18 | 11,290.73 |
| Gain | | 5,216.68 | 1,176.81 |
| | | | 5,216.68 |
| Total gain | | | [7] 6,393.49 |

In 1963, petitioners contracted for the construction of an eight-unit apartment building to be located on Petra Place. They had acquired the land there on July 16, 1963, for $5,000. Construction of the apartment building thereon commenced on August 14, 1963, and was 40-percent complete on October 1, 1963. The apartment building was completed on December 1, 1963, the date on which petitioners moved into one of the units as their residence. Their total cost basis in the Petra Place property, both building and land, was $69,931.53.

On April 1, 1964, petitioners sold the Petra Place building and land for $88,000, realizing a gain of $14,101.34, computed as follows:

| | | |
|---|---|---|
| Selling price | | $88,000.00 |
| Expenses of sale | | 4,400.00 |
| Net proceeds | | 83,600.00 |
| Cost | $69,931.53 | |
| Depreciation claimed | 432.87 | |
| Basis | | 69,498.66 |
| Gain on sale | | 14,101.34 |

They did not, however, recognize any of the gain realized on the sale of the Petra Place property as they considered that it was a gain on the sale of a residence and was to be applied against the basis of their new residence on Chippewa Drive. The cost of the Chippewa Drive property to petitioners was $28,764. Therefore, on their 1964 joint Federal

---

[7] In a footnote explaining his determination on brief, respondent states:

"This amount is based on a contract price of $47,500.00 which petitioners reported on their return and an adjusted basis, as stipulated by the parties, of $38,769.42. The contract price includes the mortgage assumption in the amount of $31,262.91, the value of the Pauline Street property in the amount of $13,900.00, and expenses of sale amounting to $2,337.09. Although the parties stipulated that $800.00 cash was also received by petitioners in the transaction, respondent did not amend his answer to increase the gain accordingly."

We construe this statement as a concession by respondent that the $800 in cash shall not be considered, part of the amount realized in determining the gain on the sale.

income tax return, they reduced their cost basis in the Chippewa Drive property by the amount of gain realized, but unrecognized, as follows:

$28, 764. 00    cost (Chippewa Drive property)
(14, 101. 34)    gain (Petra Place property)

14, 662. 66    adjusted basis (Chippewa Drive property)

Respondent, in his notice of deficiency, determined that the gain realized on the sale of the rental portion of the Petra Place property, amounting to seven-eighths of the property, was recognizable inasmuch as the petitioners did not use any of this part as their residence. Respondent further determined in his notice of deficiency that the gain on the portion used by petitioners as their residence, representing the remaining one-eighth of the property, was also recognizable inasmuch as this was the second residence sold within the same taxable year, the first residence being the Camden Road property which was sold on January 30, 1964, part of the gain on which respondent agrees is deferrable as noted earlier. He did allow petitioners to use the installment method of reporting with respect to the gain he determined to be recognizable on the sale of the Petra Place property.

Respondent also determined that, since real estate taxes are to be prorated between buyer and seller in the ratio proportionate to the time each held the real property in question and since petitioners acquired the Chippewa property on December 1, 1964, they were only entitled under section 164 to deduct in 1965, the year of payment, $62.58, or one-twelfth of the 1964 real estate taxes assessed against that property.

In 1964, Robert W. Aagaard purchased for $5,000 one hundred shares of stock in Mill Fab, Inc. (hereinafter Mill Fab), a Wisconsin corporation located in Stoughton, Wis.

As of the time of the trial herein, petitioner was still a stockholder in that corporation. However, his stock then represented only a 5-percent interest in Mill Fab, whereas it had represented a one-third interest therein in 1964.

For the first time, petitioner in his petition claimed a $5,000 deduction as a loss on this stock in 1965. Respondent denied the allowability of this claim in his answer.

As of March 1969, Mill Fab was still an operating entity, although it appears that it was never a profitable venture and it incurred losses in 1964 and 1965. The following balance sheet statements [8] reflect the financial condition of Mill Fab in 1964 and 1965:

---

[8] We were not given the benefit of any testimony or other explanatory evidence with respect to these balance sheets.

# MILL FAB, INC.

## Balance Sheet

## November 31, 1964

### ASSETS

Current:
| | |
|---|---:|
| Cash on hand | $50.00 |
| Cash in bank | 3,107.26 |
| Interest receivable | 57.04 |
| Accounts receivable | 29,747.06 |
| Finished goods—Mill | 14,482.01 |
| Work in process—Mill | 462.33 |
| Work in process—Fab | 609.68 |
| Raw materials—Mill | 28,214.60 |
| Raw materials—Fab | 35,410.16 |

| | |
|---|---:|
| Total current | $112,140.14 |

Prepaid:
| | |
|---|---:|
| Insurance | 647.62 |
| Deferred finance charge | 316.68 |
| Travel advance | 300.00 |

| | |
|---|---:|
| Total | 1,264.30 |

Fixed:
| | Cost | Reserve | Book value |
|---|---:|---:|---:|
| Land | $1,800.00 | | $1,800.00 |
| Building | 37,345.00 | $874.60 | 36,470.40 |
| Machinery and equipment | 102,091.52 | 3,898.67 | 98,192.85 |
| Delivery equipment | 7,447.67 | 726.37 | 6,731.30 |
| Office equipment | 1,535.61 | 67.87 | 1,467.74 |
| Total fixed | 150,219.80 | 5,557.51 | 144,662.29 |

| | |
|---|---:|
| | 144,662.29 |
| Organization expenses | 1,411.90 |
| Total assets | 259,478.63 |

### LIABILITIES

Current:
| | |
|---|---:|
| Notes payable | $15,900.00 |
| Accounts payable | 70,366.99 |
| Accrued FICA | 364.47 |
| Accrued Federal (wife/husband) | 751.80 |
| Accrued State (wife/husband) | 463.90 |
| Accrued property tax | 2,035.00 |
| Accrued State unemployment | 293.45 |
| Accrued Federal unemployment | 157.44 |
| Accrued interest payable | 1,246.93 |
| Accrued wages | 274.80 |
| Accrued sales commission | 268.85 |
| Deferred customer billing | 14,731.82 |

| | |
|---|---:|
| Total current liabilities | $106,855.45 |
| Long-term notes | 12,758.47 |
| Mortgage—SBA | 127,561.79 |
| Total liabilities | 247,175.71 |

### STOCKHOLDERS EQUITY

| | |
|---|---:|
| Capital stock issued | $15,000.00 |
| Paid-in stock subscription | 7,600.00 |
| Loss year to date | (10,297.08) |

| | |
|---|---:|
| Total stockholders equity | $12,302.92 |
| Total liabilities and stockholders equity | 259,478.63 |

# MILL FAB, INC.

## Balance Sheet

## May 30, 1965

### ASSETS

**Current:**

| | | |
|---|---|---:|
| Cash on hand | | $50.00 |
| Cash in bank | | 206.19 |
| Interest receivable | | 57.04 |
| Accounts receivable | | 37,806.16 |
| Finished goods—Mill | | 20,314.42 |
| Work in process—Mill | | 1,447.08 |
| Raw material—Mill | | 31,176.34 |
| Work in process—Fab | | 3,985.69 |
| Raw material—Fab | | 28,876.42 |
| Purchase finished—Fab | | 1,854.29 |
| Total current | | $125,773.63 |
| Prepaid insurance | | 3,240.75 |
| Deferred finance charge | | 3,674.17 |
| Travel advances | | 10.00 |
| Total prepaid | | 6,924.92 |

**Fixed:**

| | Cost | Reserve | Book value | |
|---|---:|---:|---:|---:|
| Land | $1,800.00 | | $1,800.00 | |
| Buildings | 37,345.00 | $1,623.64 | 35,721.36 | |
| Machinery and equipment | 109,476.52 | 7,798.15 | 101,678.37 | |
| Delivery equipment | 7,762.31 | 1,777.28 | 5,985.03 | |
| Office equipment | 1,976.87 | 143.17 | 1,833.70 | |
| Total fixed | 158,360.70 | 11,342.24 | 147,018.46 | 147,018.46 |
| Organization expense | | | | 1,129.54 |
| Total assets | | | | 280,846.55 |

### LIABILITIES

**Current:**

| | | |
|---|---|---:|
| Notes payable | | $25,479.54 |
| Accounts payable | | 91,759.72 |
| Accrued FICA | | 548.97 |
| Accrued Fed. (wife/husband) | | 975.11 |
| Accrued State (wife/husband) | | 477.59 |
| Accrued property tax | | 2,440.53 |
| Accrued State unemployment | | 377.95 |
| Accrued Federal unemployment | | 137.32 |
| Accrued interest payable | | 700.00 |
| Accrued Ill. sales tax | | 199.11 |
| Accrued payroll | | 512.23 |
| Deferred customer billing | | 6,682.70 |
| Total current | | $130,290.77 |
| Long-term notes | | 19,987.94 |
| Mortgage (SBA) | | 126,546.18 |
| Total liabilities | | 276,824.89 |

### STOCKHOLDERS EQUITY

| | | |
|---|---|---:|
| Capital stock issued | | $30,600.00) |
| Retained income | | (12,960.83) |
| Year to date (loss) | | (13,617.51) |
| Total stockholders equity | | $4,021.66 |
| Total liabilities and stockholders equity | | 280,846.55 |

OPINION

Petitioners entered into a number of real estate transactions in 1964, the tax consequences of which are in dispute. Moreover, respondent disallowed all but one-twelfth of certain real estate taxes petitioners paid and deducted on their tax return for 1965.

Although they did not take such a deduction on their tax return for 1965, petitioners also alleged for the first time in their petition that they were entitled to deduct $5,000 as a result of the worthlessness of certain stock. Respondent denied this allegation in his answer.

*1. Sale of Camden Road Property.*—On January 30, 1964, petitioners exchanged the Camden Road property and received therefor the following: The Pauline Street rental property, $800 in cash, and the assumption of the $31,262.91 mortgage on the property by the purchaser. The expenses of sale totaled $2,337.09. They reported a long-term capital gain from this sale on their 1964 tax return. Instead of recognizing any of this gain, however, they applied it in its entirety in reduction of their basis in the Pauline Street rental property. Petitioners never resided in the Pauline Street property.

Section 1002 provides as follows:

Except as otherwise provided in this subtitle, on the sale or exchange of property the entire amount of the gain or loss * * * shall be recognized.

Section 1031 and section 1034 carve out two exceptions to this general rule. Petitioner apparently relies upon section 1031 [9] to support his position. Respondent on brief asserts that section 1031(a) does not apply to the gain realized on the exchange of the Camden Road prop-

---

[9] SEC. 1031. EXCHANGE OF PROPERTY HELD FOR PRODUCTIVE USE OR INVESTMENT.

(a) NONRECOGNITION OF GAIN OR LOSS FROM EXCHANGES SOLELY IN KIND.—No gain or loss shall be recognized if property held for productive use in trade or business or for investment * * * is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

(b) GAIN FROM EXCHANGE NOT SOLELY IN KIND.—If an exchange would be within the provisions of subsection (a), * * * if it were not for the fact that the property received in exchange consists not only of property permitted by such provisions to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

*    *    *    *    *    *    *

(d) BASIS.—If property was acquired on an exchange described in this section, * * * then the basis shall be the same as that of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized on such exchange. If the property so acquired consisted in part of the type of property permitted by this section * * * to be received without the recognition of gain or loss, and in part of other property, the basis provided in this subsection shall be allocated between the properties (other than money) received, and for the purpose of the allocation there shall be assigned to such other property an amount equivalent to its fair market value at the date of the exchange. For purposes of this section, * * * where as part of the consideration to the taxpayer another party to the exchange assumed a liability of the taxpayer or acquired from the taxpayer property subject to a liability, *such assumption or acquisition (in the amount of the liability) shall be considered as money received by the taxpayer on the exchange.* [Emphasis supplied.]

erty. However, he contends that the amount of the gain allocable to the apartment unit used by petitioners as their old residence should not be recognized by virtue of section 1034,[10] which sets forth rules as to the nonrecognition of gain upon the sale or exchange of property used by the taxpayer as his principal residence.

Respondent determined that petitioners' realized gain was in the amount of $6,393.49. He asserts on brief that this determination reflects a fair market value for the Pauline Street property of $13,900, which was the value reported by petitioners on their tax return for 1964.

For the first time at trial, petitioners alleged that the fair market value of the Pauline Street property was $11,900, instead of $13,900, the amount indicated on their 1964 tax return. They had not raised the issue of valuation in their petition.

On brief, respondent contends that the issue of valuation is not properly before the Court. We disagree. Although there were no formally amended pleadings, counsel for respondent did not claim surprise at the trial when petitioner proceeded to testify and introduce evidence bearing on the question of the valuation of the Pauline Street property. Respondent's objections at trial concerning this evidence were directed to the probative force and value of such proof, and not to whether valuation was a proper issue in this case. While respondent did raise this latter argument on brief, he also dealt therein with the valuation question as a substantive issue to safeguard his position in the event that we found the issue of valuation properly raised. In view of these circumstances, we believe this question is before the Court. See *Commissioner* v. *Finley*, 265 F. 2d 885 (C.A. 10, 1959) ; *Arthur C. Ruge*, 26 T.C. 138, 142 (1956).

---

[10] SEC. 1034. SALE OR EXCHANGE OF RESIDENCE.

(a) NONRECOGNITION OF GAIN.—If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) RULES FOR APPLICATION OF SECTION.—For purposes of this section :

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(4) If the taxpayer, during the period described in subsection (a), purchases more than one residence which is used by him as his principal residence at some time within 1 year after the date of the sale of the old residence, only the last of such residences so used by him after the date of such sale shall constitute the new residence.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(d) LIMITATION.—Subsection (a) shall not apply with respect to the sale of the taxpayer's residence if within 1 year before the date of such sale the taxpayer sold at a gain other property used by him as his principal residence, and any part of such gain was not recognized by reason of subsection (a) \* \* \*

As to the evidence introduced by petitioner bearing upon the value of the Pauline Street property, we accord very little weight to the fire insurance policy. The most obvious reason for our action is that there is no assurance that a property owner will insure his property in an amount equal to its fair market value. Moreover, this particular policy was issued 1 year subsequent to the date of the exchange at issue and covers only the building, not the land.

We do feel, however, that the two agreements, whereby petitioner listed the Pauline Street property for $12,900 with a real estate broker and gave the broker the right to procure a purchaser, do constitute evidence of probative value. Petitioner listed the property as early as April 21, 1964, not even 3 months after he received it in exchange for the Camden Road property. Moreover, he kept the property listed for almost 10 months, until February 1, 1965, at the same price of $12,900. No one purchased the property while it was listed at that price. If the listed price were inflated, we could understand why no one would want to purchase the property at such a price. However, if the listed price were substantially below the fair market value, we cannot comprehend why it was not sold immediately after it was placed on the market. The above circumstances lead us to conclude that the fair market value of the Pauline Street property was no greater than $12,900, the listed price.

Respondent refers us to *Estate of Mabel Lloyd Ridgeley*, 180 Ct. Cl. 1220 (1967), for the proposition that proof of an offer to buy or sell land is not competent evidence to show the value thereof. It is noteworthy that, in that case, the court footnoted its conclusion of law and stated that evidence that a landowner offered to sell his land for a specific amount at or near the critical time of valuation does have probative value with respect to the maximum value of such property on the date of the offer. Therefore, petitioner's listing the Pauline Street property for sale at $12,900 is strong proof that he did not consider the land was worth more than that amount.

In accord with the foregoing discussion, we hold that petitioners realized a total gain of $5,393.49 on the exchange of the Camden Road property, computed as follows:

| | |
|---|---:|
| Amount realized [11] | $46,500.00 |
| Less: Expenses of sale | 2,337.09 |
| Balance | 44,162.91 |
| Less: Basis | 38,769.42 |
| Total gain realized | 5,393.49 |

---

[11] Respondent conceded that the $800 cash payment was not to be considered as part of the amount realized. See fn. 7 *supra*.

We now turn to the issues regarding the recognition of that gain. For the sake of clarity, we shall deal with sections 1031 and 1034 separately.

*a. Section 1034.*—Section 1.1034–1(c)(3)(ii), Income Tax Regs., states in part:

Where part of a property is used by the taxpayer as his principal residence and part is used for other purposes, an allocation must be made to determine the application of * * * section [1034(a)]. * * *

This regulation is entirely reasonable and, in fact, follows closely the language of the congressional committee reports on section 112(n) of the Internal Revenue Code of 1939, the predecessor of section 1034(a). See H. Rept. No. 586, 82d Cong., 1st Sess. (1951), 1951–2 C.B. 357, 436; S. Rept. No. 781 (Supp.), 82d Cong., 1st Sess. (1951), 1951–2 C.B. 545, 566.

Our first task, therefore, is to determine whether the one apartment located on Camden Road in which petitioners resided until December 1, 1963, constituted "property used by the taxpayer[s] as * * * [their] principal residence," so as to qualify as petitioners' "old residence" within the meaning of section 1034(a), and thereby necessitate the allocation of a proportionate part of the gain realized on the exchange of the Camden Road property to that "old residence."

Petitioner argues on brief that he should not be required to defer the taxation of gain on the sale of property in which he is not residing as of the date of sale.

There can be no hard-and-fast rule nor magic formula in this area because whether or not certain property constitutes a principal residence within the purview of section 1034(a) depends upon all the facts and circumstances in each case. *Richard T. Houlette*, 48 T.C. 350 (1967); H. Rept. No. 586, *supra;* S. Rept. No. 781 (Supp.), *supra;* and sec. 1.1034–1(c)(3)(i), Income Tax Regs.

It is the taxpayer's use of the property in question which is determinative. *Richard T. Houlette, supra,* and *William C. Stolk,* 40 T.C. 345 (1963), affirmed per curiam 326 F. 2d 760 (C.A. 2, 1964). In other words, "His *use* must be equated with the statutory requirement of 'principal residence.' " *William C. Stolk, supra* at 350. However, there is no requirement that the taxpayer actually occupy the putative old residence at the time of its sale. *Richard T. Houlette, supra* at 354, and *Ralph L. Trisko,* 29 T.C. 515, 518–519 (1957). Furthermore, the circumstance of the temporary renting out of the old or new residence will not necessarily prevent the application of section 1034(a). *William C. Stolk, supra* at 355. In this regard, the aforementioned committee reports are explicit:

The term "residence" is used in contradistinction to property used in trade or business and property held for the production of income. Nevertheless, the mere

fact that the taxpayer temporarily rents out either the old or the new residence may not, in the light of all of the facts and circumstances in the case, prevent the gain from being not recognized. For example, if the taxpayer purchases his new residence before he sells his old residence, the fact that he rents out the new residence during the period before he vacates the old residence will not prevent the application of * * * [section 1034(a)]. [H. Rept. No. 586, *supra*.] [12]

The facts and circumstances of the instant case are clearly within the intendment of Congress as indicated by the committee reports. Petitioners lived in the apartment on Camden Road and regarded it as their principal residence until they moved to Petra Place, which they had acquired within the statutory period set out in section 1034(a) and which they then regarded as their principal residence. The fact that the date of sale of the old residence occurred subsequent to the date petitioners moved into their new principal residence is not determinative. Nor is the circumstance of their having rented out their old residence decisive.[13]

We conclude then, on the record herein, and hold that the apartment unit petitioners had occupied on Camden Road constituted "property * * * used by the taxpayer[s] as * * * [their] principal residence." Sec. 1034(a). Therefore, a proportionate part of the gain realized on the sale of the Camden Road property, as determined herein, must be allocated to that apartment unit.

Since there were four apartments in the building on Camden Road, respondent allocated one-fourth of the gain to the apartment constituting petitioners' old residence. The burden is on petitioners to show that such an allocation was unreasonable or arbitrary. Absent any such evidence, we accept respondent's method of allocation.

---

[12] For identical language, see report of the Committee on Finance, S. Rept. No. 781 (Supp.), 82d Cong., 1st Sess. (1951), 1951–2 C.B. 566.

A further explanation appears in the summary of the provisions of the Revenue Act of 1951 prepared by the staff of the Joint Committee, 1951–2 C.B. 287, 309, as follows:

"The taxpayer is not required to have actually been occupying his old residence on the date of its sale. Relief is to be available even though the taxpayer moved into his new residence and rented the old one temporarily before its sale."

In commenting on the first sentence of the foregoing summary, we stated in *William C. Stolk*, 40 T.C. 355:

"The * * * statement clearly was limited to the possible situation where the taxpayer temporarily rented out his old residence before its sale, having acquired and moved into his new residence within the statutory period of 1 year before the date of the sale of the old residence; or was limited to a similar situation."

[13] We are fully aware of sec. 1034(c)(4). See fn. 10 *supra*. However, even though that subsection may not *treat* the Petra Place property as petitioners' "new residence" for purposes of applying sec. 1034(a), it does not negate the possibility that the Petra Place property became petitioners' principal residence. Moreover, petitioners had habitually used the apartment on Camden Road, their former or old residence, as their principal residence, and this is what is required to come within the terms of sec. 1034(a).

Therefore, the gain attributable to the exchange of petitioners' principal residence is $926.81.[14] The remainder of the gain, viz, $4,466.68,[14] is attributable to the exchange of rental property, the treatment of which we will discuss later in reference to section 1031.

Next, we must decide which property constitutes petitioners' "new residence" under section 1034(a).[15]

Petitioners sold their "old residence" on January 30, 1964, and within a period beginning 1 year before the date of such sale and ending 1 year after such date, they purchased and used both the Petra Place property[16] and the Chippewa Drive Property[17] as their principal residence.

Under section 1034(c)(4) it is clear that where more than one residence is used by the taxpayer as his principal residence within 1 year after the date of the sale of the old residence, then only the last of such residences so used shall constitute the new residence for purposes of section 1034(a). Therefore, the Chippewa Drive property constituted petitioners' "new residence," and the amount of gain realized on the sale of the Camden Road property shall be applied against petitioners' basis in the Chippewa Drive property.

Now we shall decide whether the remainder of the gain realized on the sale of the Camden Road property and attributable to the rental portion thereof can be deferred under section 1031.

*b. Section 1031.*—Under section 1031(a) nonrecognition applies only in the situation where property held for productive use in trade or business or for investment is exchanged *solely* for property of a like kind to be held either for productive use in trade or business or for investment.

---

[14] Our computation and allocation of gain is as follows:

|  |  | Rental—<br>75 percent | Personal—<br>25 percent |
|---|---|---|---|
| Total cost (Camden Road property) | $40,455.67 | $30,341.75 | $10,113.92 |
| Total depreciation allowable |  | 1,686.25 | 0 |
| Basis |  | 28,655.50 | 10,113.92 |
| Selling price | 46,500.00 |  |  |
| Expenses of sale | 2,337.09 |  |  |
| Net proceeds | 44,162.91 | 33,122.18 | 11,040.73 |
| Gain |  | 4,466.68 | 926.81 |
|  |  |  | 4,466.68 |
| Total gain |  |  | 5,393.49 |

[15] Respondent and petitioners appear to agree that Chippewa Drive constitutes the "new property" within that section. They disagree as to what property constituted the "old residence." We have already held that the Camden Road property qualified as petitioners' "old residence." However, since we do not know what petitioners' position would be as to the "new residence" now that we have held against them on the issue of the "old residence," we shall make an independent determination of that issue under sec. 1034.

[16] Petitioners purchased the land on July 16, 1963. They moved into the apartment building on Dec. 1, 1963, upon its completion.

[17] Petitioners purchased this property and occupied it on Dec. 1, 1964.

Petitioner contends that he is entitled to nonrecognition on the exchange of the Camden Road property [18] for the Pauline Street property which petitioners used entirely as rental property. Respondent does not contest the fact that the transaction involving the Camden Road property constituted an "exchange" within the meaning of section 1031; rather, he maintains that the exchange was not solely in kind and that section 1031(b) governs the transaction. We agree with respondent on this issue.

In addition to receiving the Pauline Street property in the exchange, petitioners also received $800 in cash. Moreover, a $31,262.91 mortgage on the Camden Road property was assumed by the other party to the exchange, and under section 1031(d) such assumption shall be considered as money received by the petitioners. Therefore, petitioners shall be treated as having received $32,062.91 in money on the exchange.

Section 1031(b) provides that the gain, if any, realized on an exchange not solely in kind as required by section 1031(a) shall be recognized, but not in an amount in excess of the sum of the money and the fair market value of other property received. Since petitioners are considered as having received $32,062.91 in money, it is obvious, and we hold, that the $4,466.68 in gain attributable to the exchange of the rental portion of the Camden Road property shall be recognized in full.[19]

*2. Sale of Petra Place Property.*—On July 16, 1963, petitioners acquired certain land located on Petra Place for $5,000. Subsequently, they contracted for the construction of an eight-unit apartment building thereon, the construction of which was commenced on August 14, 1963, and completed on December 1, 1963, at which time petitioners moved into one of the apartments as their residence. On October 1, 1963, construction of the building was only 40-percent completed. Of the remaining seven units which were held for rental purposes, five were leased by petitioners. On April 1, 1964, petitioners sold the Petra Place property for $88,000, thereby realizing a gain of $14,101.34. In reporting this transaction on their tax return for 1964, petitioners recognized none of the gain therefrom because they treated it as the sale of a residence within the purview of section 1034.

Petitioners contend that since the entire Petra Place property was devoted exclusively to residential purposes, its sale qualified under section 1034(a).

We observe first of all that petitioners failed to make the same argument in connection with the Camden Road property. Their incon-

---

[18] In referring to the Camden Road property in our discussion of the applicability of sec. 1031, we are referring only to that much of the property which was rented out and to the gain allocable thereto.

[19] The same result follows even if we disregard the $800 cash payment in an attempt to conform to respondent's concession.

sistency will not penalize them, however, for there is no merit to their assertion.

Petitioners are grasping at straws. The statute makes it clear that its provisions are applicable only to gain on the sale of property used by a taxpayer as his principal residence. The first sentence of section 1034(a) refers to property "used by the taxpayer as his principal residence." The statute contemplates looking to the use of the taxpayer-owner of the property, and not to the use of other individuals. To accept petitioners' construction is to ignore the intention of Congress in enacting section 1034. Moreover, such a construction would make us slaves to literalness and semantics.

Section 1.1034–1(c)(3)(ii), Income Tax Regs., which, as we noted earlier, follows almost word for word the language of the committee reports, states:

> (3) *Property used by the taxpayer as his principal residence.* * * *
>
> (ii) Where part of a property is used by the taxpayer as his principal residence and part is used for other purposes, an allocation must be made to determine the application of this section. If the old residence is used only partially for residential purposes, only that part of the gain allocable to the residential portion is not to be recognized under this section and only an amount allocable to the selling price of such portion need be reinvested in the new residence in order to have the gain allocable to such portion not recognized under this section. If the new residence is used only partially for residential purposes only so much of its cost as is allocable to the residential portion may be counted as the cost of purchasing the new residence.

The import of the word "residential," as used therein, is clear: it refers to property used by the taxpayer as his principal residence.

Since only one apartment, out of eight, was used by petitioners as their principal residence, only the gain allocable thereto could qualify for nonrecognition under section 1034. However, by virtue of section 1034(d), the nonrecognition provisions of section 1034(a) do not apply because petitioners sold or exchanged other property used by them as their principal residence, viz, the Camden Road property, within 1 year preceding the date of the sale of the Petra Place property, and did not recognize part of the gain therefrom by virtue of section 1034(a).[20]

Nor do the nonrecognition provisions of section 1031 apply to the gain realized on the sale of the rental portion of the Petra Place property because that section is operative only where the property described therein is *exchanged* solely for property of a like kind. Section 1031 does not apply to a sale of such property.

---

[20] If the provisions of sec. 1034 apply, nonrecognition is mandatory. H. Rept. No. 586. 82d Cong., 1st Sess. (1951), 1951–2 C.B. 357; S. Rept. No. 781 (Supp.), *supra;* and sec. 1.1034–1(a), Income Tax Regs.

It is clear then that neither section 1034 nor section 1031 applies to except the gain realized on the sale of the Petra Place property from recognition.

Respondent asserts on brief that at least 60 percent of the gain allocable to the sale of the building situated at Petra Place is to be taxed as short-term capital gain. His rationale for this result is stated succinctly in his brief:

the parties have stipulated that on October 1, 1963, six months prior to the sale of the Petra Place property, the building being constructed thereon was 40 percent complete. Therefore, at least sixty percent of such gain is to be allocated to short term capital gain.

The parties agree that the Petra Place property constitutes a capital asset.

Petitioners apparently contend that the holding period for the building should commence to run as of the date they acquired the land at Petra Place because it was at that time that they became obligated to engage a contractor to construct the building. Petitioners' argument misses the point because they did not sell the right or obligation to construct a building on the land. Rather they sold the land and the building thereon.

In *Fred Draper*, 32 T.C. 545 (1959), we approved of the method adopted by the Court of Appeals in *Paul* v. *Commissioner*, 206 F. 2d 763 (C.A. 3, 1953), reversing *M. A. Paul*, 18 T.C. 601 (1952), in its determination of the holding period of a building, the construction of which had commenced prior to a date 6 months before its sale. The Court of Appeals required an allocation in such a situation. The following langauge, which we quoted in *Fred Draper*, *supra* at 549, contains the rationale of that court on this matter:

The Commissioner objects to an allocation, arguing that the asset that was sold and upon which the gain was realized was the whole building and not a part of it. That is true, but it is obvious that part of what was sold was held for more than six months. * * * Allocation here is practical and fair. We see no reason to make this an all-or-nothing proposition. It is certainly realistic to recognize that there are gradations between no building and a completed building, and we think it proper that those gradations have tax significance. * * * [206 F. 2d at 766.]

While it is true that those two cases involved section 117 (j) of the 1939 Code, the predecessor of section 1231, their rationale is sound and equally applicable to the instant case. See *Commissioner* v. *Williams*, 256 F. 2d 152 (C.A. 5, 1958), reversing a Memorandum Opinion of this Court.

The record does not disclose the cost of construction of that part of the building erected as of October 1, 1963. We only know that the building was 40-percent completed on that date. This fact standing

alone would be an insufficient basis upon which to allocate the gain realized on the sale of the building. However, petitioners bear the burden of proving that respondent's determination was incorrect. This they have not done. Therefore, we must sustain respondent in his determination that 60 percent of the gain attributable to the sale of the building is short-term capital gain.

*3. Real Estate Taxes.*—In 1965, petitioners paid real estate taxes totaling $750.94 on the Chippewa Drive property. They deducted that amount in full on their tax return for 1965. Respondent disallowed that deduction to the extent of eleven-twelfths of the amount claimed.

Petitioners assert on brief that respondent's regulations which limit the amount of real estate taxes deductible by a seller and a purchaser of real property are arbitrary and capricious. We cannot accept this contention because the regulations in question [21] are based on section 164(d) which provides, in part, as follows:

SEC. 164. TAXES.

(d) APPORTIONMENT OF TAXES ON REAL PROPERTY BETWEEN SELLER AND PURCHASER.—

(1) GENERAL RULE.—For purposes of subsection (a), if real property is sold during any real property tax year, then—

(A) so much of the real property tax as is properly allocable to that part of such year which ends on the day before the date of the sale shall be treated as a tax imposed on the seller, and

(B) so much of such tax as is properly allocable to that part of such year which begins on the date of the sale shall be treated as a tax imposed on the purchaser.

In Wisconsin, the period to which the real property tax imposed relates is the calendar year. See *Van Dyke* v. *United States*, 156 F. Supp. 155 (E.D. Wis. 1957); *Schrader* v. *Otto*, 238 Wis. 469, 300 N.W. 255 (1941). Therefore, 1964 is the real property tax year in the instant case, and section 164(d) limits the deduction by petitioners to the portion of the tax allocable to that part of the year which begins on the date they purchased the Chippewa Drive property, viz, December 1, 1964. See *Ernest A. Pederson, Jr.*, 46 T.C. 155 (1966). Accordingly, 31/365 of the real property taxes for 1964 are deductible by petitioners in 1965, the year of payment.

*4. Mill Fab Stock.*—For the first time in their petition, the taxpayers alleged that they were entitled to a deduction of $5,000 in 1965, as a loss arising from the alleged worthlessness of 100 shares of Mill Fab stock which they had purchased in 1964. Respondent denied this allegation in his answer.

Section 165(a) permits a deduction for any loss sustained during the taxable year and not compensated by insurance or otherwise. As

---

[21] Sec. 1.164-6, Income Tax Regs.

to stock, section 165 (g) provides as follows:

SEC. 165. LOSSES.

(g) WORTHLESS SECURITIES.—

(1) GENERAL RULE.—If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset.

(2) SECURITY DEFINED.—For purposes of this subsection, the term "security" means—

(A) a share of stock in a corporation;

(B), a right to subscribe for, or to receive, a share of stock in a corporation; * * *

It is clear that where there is a decline in the value of a security which is short of total worthlessness, and where there was no sale or other disposition, no deduction shall be allowed under 165(a). *Coyle v. Commissioner*, 142 F. 2d 580 (C.A. 7, 1944); *Crocker First Nat. Bank of San Francisco*, 26 B.T.A. 1078 (1932); *Harry C. Howard*, 20 B.T.A. 207 (1930), affd. 56 F. 2d 781 (C.A. 6, 1932). Furthermore, the taxpayer's beliefs that the cost of stock could not be recovered is not sufficient to establish a loss. *James G. Hoover*, 32 T.C. 618 (1959). All the facts and circumstances must be considered in each case. *Boehm v. Commissioner*, 326 U.S. 287 (1945).

In the instant case, the only evidence we have with respect to Mill Fab's financial condition are two balance sheet statements, each of which reflects an excess of assets over liabilities.

Petitioner made no attempt to refute the balance sheets nor to introduce other evidence which would establish the worthlessness of his investment.

Moreover, it appears that Mill Fab, as of 1969, was and had always been an operating company, despite the fact that it had a history of operating losses.

On the record herein, we hold that petitioners failed to establish the worthlessness of their Mill Fab stock in 1965. Therefore, they are not entitled to a loss deduction, capital or otherwise, with respect thereto since there was no sale or other disposition of the stock in 1965.

To reflect the conclusions reached herein and the concessions made by the parties,

*Decision will be entered under Rule 50.*