J. DOUGLAS BROWN AND JUNE H. BROWN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 47805-86.
United States Tax Court
T.C. Memo 1988-174; 1988 Tax Ct. Memo LEXIS 201; 55 T.C.M. (CCH) 675; T.C.M. (RIA) 88174; April 25, 1988. Ralph R. Bagley, for the petitioners. Christine Colley, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $ 10,000.20 in petitioners' 1983 Federal income tax. The issue for determination is whether petitioners are entitled to claim during the year in issue a worthless security deduction of $ 50,000 with respect to a convertible debenture. FINDINGS OF FACT Some of the facts in this case are stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Petitioners resided in Laconia, New Hampshire, when they filed the petition. On September 15, 19981, J. Douglas Brown (petitioner) *202 purchased a $ 50,000 12-percent convertible timber participation certificate (the certificate) from Creative Forest Resources, Inc. (CFR). Under the terms of the certificate, petitioner could convert the principal into shares of CFR common stock at any time until September 30, 1983. The certificate was to mature on October 1, 1983, at which time CFR was to have repaid petitioner the principal balance and any unpaid accrued interest. In January 1983 petitioner received a letter from CFR's president, addressed to CFR's certificate holders, directors, and employees, concerning the company's then existing financial troubles. According to the letter, substantially all of CFR's creditor obligations were past due, and actions being taken by various creditors to satisfy the obligations threatened CFR's operations. Petitioner received another letter from the president of CFR, dated March 24, 1983, concerning its continuing financial and operational problems. The March letter indicated that operations had ceased and outlined a plan to dispose of CFR's assets by September 30, 1983. In this regard, the letter stated, Hopefully, the result of the program would be to return a meaningful *203 portion of the funds owed to all parties concerned. While we can give no assurance, our analysis is that there should be values in excess of the bank loans, that the trade creditors would agree to a settlement arrangement, and, thus, we could repay in whole or in part the funds advanced by all of us.
The president also cited the possible need to file for bankruptcy. On September 30, 1983, CFR filed a Debtor's petition under Chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Connecticut. The petition listed total assets in the amount of $ 3,354.810 and total debts of $ 4,355.042, including unsecured claims without priority of $ 1,711,002. A further breakdown of figures indicated the amount regarded as available to unsecured creditors as follows: Assets
$ 3,354,810
Less:
Priority debts
$    15,556
Secured claims
2,628,484
2,644,040
Balance - Available to
unsecured creditors
$   710,770
The bankruptcy petition listed J. Douglas Brown as an unsecured creditor, without priority, with a claim of $ 60,002. The amount included the certificate's principal and unpaid accrued interest.
*204 In a letter addressed to CFR's certificate holders, note holders, and directors, dated October 7, 1983, CFR's Chairman of the Board apprised petitioner of the board's decision to file the bankruptcy petition and liquidate. The letter also stated, "Each of you should consult with your personal tax advisor on maximizing the benefits to you of writing off your loan or investment during the current tax year." The clerk of the bankruptcy court scheduled the meeting of creditors for November 14, 1983, and the proof of claim bar date for February 13, 1984. Petitioner did not file a proof of claim, and thus he was barred thereafter from asserting his claim. The bankruptcy Trustee's Account, dated November 2, 1984, indicated that the estate had funds on deposit of $ 12,381. After other payments, it was finally determined that there was a balance of $ 9,641 to be paid as a liquidating dividend to unsecured creditors. On their 1983 tax return petitioners claimed a loss of $ 50,000 on the worthlessness of the certificate. In his notice of deficiency, respondent disallowed that claim. OPINION *205 Section 165(g)[1] allows a deduction for any security that is a capital asset which becomes worthless during the taxable year. For purposes of this provision, the term "security" may include a bond, debenture, note, or certificate, or other evidence of indebtedness, issued by a corporation with interest coupons or in registered form. Section 165(g)(2). The parties agree that the certificate was a security within the meaning of section 165(g). No deduction is allowable under section 165(g) unless the value of the security is entirely worthless. Aagaard v. Commissioner,56 T.C. 191, 209 (1971). The taxpayer's beliefs regarding the value, or worthlessness, of the security are not sufficient to establish loss. Boehm v. Commissioner,326 U.S. 287, 292 (1945); Aagaard v. Commissioner,56 T.C. at 209. A security is "worthless" only when it ceases to have (1) current liquidating value and (2) potential value through the foreseeable operations of the entity which issued the security, as demonstrated *206 by a relevant identifiable event which occurred during the year in which the deduction has been taken. Austin Co. v. Commissioner,71 T.C. 955, 969-970 (1979); Scifo v. Commissioner,68 T.C. 714, 725-726 (1977). In order to obtain the deduction, the taxpayer bears the burden of proving that the security was worthless in the year claimed. Boehm v. Commissioner,326 U.S. at 294. The question we must decide is whether petitioner's certificate became worthless during 1983. Petitioners argue that the following 1983 events identify the certificate's worthlessness in that year: (1) the cessation of business, (2) the filing of the bankruptcy petition, (3) the correspondence from CFR, and (4) the chairman's recommendation that certificate holders obtain tax advice for the purpose of writing off the investment in that year. Respondent argues that, despite the occurrence of such events, the certificate retained some intrinsic value through the end of 1983, and that the earliest identifiable event of its worthlessness occurred on the proof of claim bar date in February 1984, when petitioner forfeited his claim to a liquidating distribution. *207 All of the objective evidence indicates that the certificate did have some liquidating value during the taxable year. CFR's bankruptcy petition indicated that, as of September 30, 1983, unsecured creditors such as petitioner stood to recover over 40 percent of the value of their claim. Petitioners provide no objective evidence that the certificate had no liquidating value through the end of 1983. In fact, the bankruptcy trustee's final account, which was rendered after 1983, indicates that the balance available for unsecured creditor's claims was never entirely wiped out. We agree with respondent that the first and only identifiable event of the worthlessness of petitioner's certificate occurred on the proof of claim bar date in February 1984. Petitioners' assertion that CFR's insolvency, cessation of business, and initiation of bankruptcy proceedings in 1983 are identifiable events of the certificate's worthlessness in that year is not supported by the cases they cite. The taxpayers in those cases were shareholders of insolvent corporations. See Mahler v. Commissioner,119 F.2d 869 (2d Cir. 1941); Keeney v. Commissioner,116 F.2d 401 (2d Cir. 1940); *208 Alexander v. Commissioner, a Memorandum Opinion of this Court dated July 29, 1941. Thus, their priorities and other circumstances in a liquidation proceeding would be very different from those of creditors, like petitioner. Neither insolvency nor the institution of bankruptcy proceeding per se renders a creditor's claim valueless. We are also unpersuaded by petitioners' argument that the general information provided by CFR in 1983 and the chairman's recommendation that certificate holders seek tax advice regarding their losses indicate the certificate was worthless in that year. CFR's correspondence never indicated that the certificates were wholly worthless. The letter dated March 24, 1983, explicitly indicated otherwise. Furthermore, even if petitioners interpreted the letters and the chairman's recommendation to mean that the certificate was wholly worthless, their unfounded beliefs would not be sufficient to support a deduction. For the foregoing reasons, we conclude that the certificate was not worthless during 1983. Thus, petitioners are not entitled to corresponding worthless security deduction for the year claimed. Decision will be entered for the respondent. *209 Footnotes
1. All section references are to the Internal Revenue Code as amended and in effect during the year in issue, except as otherwise noted. ↩