RICHARD T. HOULETTE AND VIRGINIA E. HOULETTE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4795-63.    Filed June 20, 1967.

B. M. Millner, for the petitioners.

Douglas O. Tice, Jr., for the respondent.

HOYT, Judge: Respondent determined deficiencies in petitioners' income tax for the year 1961 in the amount of $340.25. The parties have reached agreement as to the correct disposition of certain casualty loss and travel expense issues which were raised by the petition. The single issue remaining for decision is whether the purchase by petitioners of a house in Manitowoc, Wis., followed by the sale of a house owned by them in Portland, Oreg., qualifies for treatment under section 1034, I.R.C. 1954,[1] so that the gain realized on the sale of the Portland house will not be recognized in 1961.

### FINDINGS OF FACT

All of the facts have been stipulated and are found accordingly.

Petitioners are Richard T. and Virginia E. Houlette, husband and wife. For the taxable year 1961 they filed a joint Federal income tax return with the district director of internal revenue at Milwaukee, Wis. Richard T. Houlette is a lieutenant commander in the U.S. Coast Guard presently stationed in Baltimore, Md. He has been a member of the Coast Guard continuously since 1950. At the time of his petition to this Court, Richard was stationed at the U.S. Coast Guard Reserve Training Center in Yorktown, Va., and the petitioners resided in Government quarters at the U.S. Coast Guard Reserve Training Center at Yorktown. All references hereinafter made to petitioner in the singular shall refer to Richard.

On March 1, 1952, petitioner was assigned by the Coast Guard to duty in Portland, Oreg. In April of 1954 petitioner and his wife purchased a house and lot located at 822 NE. 112th Avenue in Portland at an original cost of $14,150. They lived in this house from April of 1954 to July 1, 1955. In March of 1955, petitioner had been notified that he would be transferred to duty in Alaska, effective in July 1955.

When petitioner and his wife were notified of their pending transfer from Portland to Alaska, they attempted to sell the home which they had purchased in Portland in April of 1954. Prior to July 1, 1955, when petitioners departed Portland for Alaska, they attempted and made reasonable efforts to sell their Portland house without the assistance of a real estate agent. In spite of these efforts to sell their house, the Houlettes did not find a purchaser who would buy without their

---

[1] All statutory references shall be to the Internal Revenue Code of 1954 unless otherwise noted.

incurring a loss on the sale. Accordingly, they rented out the property under a 2-year lease commencing July 1, 1955.

Following petitioner's transfer from Portland on July 1, 1955, petitioner and his wife lived in quarters furnished by the Government at Juneau, Alaska. They continued to live in Juneau until the completion of petitioner's tour of duty there in June of 1958. The July 1955 lease of their Portland house had been for a 2-year term. At its expiration on July 1, 1957, the lease was extended for another 1-year period.

In June of 1958, petitioner was transferred by the Coast Guard from Juneau to Astoria, Oreg. At this point, the 1-year extension of the original lease on the Portland house was about to expire and the Houlettes again attempted unsuccessfully to sell the house. In this effort and after July 1, 1955, generally, the Portland property was managed by Bushey Rentals & Insurance of that city, a firm dealing in real property management, rentals, and sales. The 1-year extension of the original lease, which ran from July 1, 1957, through the end of June 1958, was also handled by the Bushey firm. This firm again made reasonable efforts to sell the Portland property during June of 1958 but the problem with selling the house lay in the continuing difficulty of obtaining a purchaser without incurring a loss on the sale. All subsequent unsuccessful efforts to sell were also made by the Bushey firm and to petitioner's knowledge these subsequent efforts were reasonable but were unsuccessful because of the difficulty the seller met in securing a purchaser without incurring a loss on the sale.

Petitioner was stationed in Astoria, Oreg., from June 1958 until July 1960. In Astoria the Houlettes again lived in quarters furnished by the Government. Following the unsuccessful effort to sell in June of 1958 described above, they leased their house in Portland, for a 1-year term, under a lease commencing June 30, 1958. Subsequently, they rented the house under leases commencing June 30 of the years 1959 and 1960. During these years each time a tenant was due to vacate the Portland property, unsuccessful efforts were made by the Bushey firm to sell the house. The last-mentioned lease of the Portland house, which commenced June 30, 1960, gave possession to a couple named Fitz and was for a term of 2 years.

Upon the completion of his tour in Astoria, Oreg., in July of 1960, petitioner was transferred by the Coast Guard to Manitowoc, Wis. Upon arrival at this new station, petitioner and his wife lived in rented quarters for a brief period ending September 6, 1960, at which time they purchased a residence located at 1106 Memorial Drive in Manitowoc. The cost of the Manitowoc house was $21,000.

On May 1, 1961, the Houlettes finally sold the house in Portland which they had owned since 1954. The date of sale was approximately 8 months after the purchase of the new house in Manitowoc. The sale

was handled by the Bushey firm in Portland. At the time of sale, the property was still subject to the lease of June 30, 1960, but by mutual agreement between the Houlettes and their tenants, the lease was terminated on the date of sale, May 1, 1961.

Petitioner realized a gain of $2,571.08 on the sale of the Portland house. This gain is computed as follows:

| | | |
|---|---:|---:|
| Selling price | | $15,000.00 |
| Selling expenses | | 606.45 |
| | | |
| Net selling price | | 14,393.55 |
| Cost basis | $15,346.75 | |
| Depreciation | 3,524.28 | |
| Adjusted cost basis | | 11,822.47 |
| | | |
| Gain on sale of property | | 2,571.08 |

On their joint Federal income tax return for 1961, petitioner and his wife reported no gain from the sale of the Portland house. They attached a Form 2119, which is made available by the Commissioner as a convenience and in which taxpayers may set out pertinent facts and figures concerning the sale or exchange of personal residences. Clearly, in supplying the information called for by the Form 2119, the Houlettes anticipated that their purchase of the Manitowoc house and their sale of the Portland house were within the ambit of section 1034.

On July 12, 1963, respondent determined the $340.25 deficiency in income tax for 1961 hereinabove mentioned. Respondent, in giving the statutory notice, employed a short-form statement which included no explanations of the adjustments made. The parties have stipulated that the determination of deficiency was based upon a report of audit examination dated May 10, 1963. The report of examination included the following statement to the Houlettes:

It is held that the sale of the property located in Portland, Oreg., does not represent the sale of a personal residence and thus the gain would not be excludable under the provisions of Section 1034 of the Internal Revenue Code. * * *

Because the parties have reached agreement as to the correctness of certain deductions originally in issue, the sole question remaining for decision is whether the gain on the sale of the Portland house is subject to the nonrecognition provisions of section 1034.

OPINION

Section 1034 of the Internal Revenue Code of 1954 provides in pertinent part as follows:

SEC. 1034. SALE OR EXCHANGE OF RESIDENCE.

(a) NONRECOGNITION OF GAIN.—If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after

December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.

Respondent's contention is that the Portland house, which was sold after 6 years of nonoccupancy by petitioner, does not qualify as petitioner's "old residence" within the meaning of section 1034(a), quoted above. If the Portland house does qualify as petitioner's "old residence," then the parties are agreed that the gain realized on the sale is subject to nonrecognition under section 1034. In order to qualify as an "old residence" under the statute, the Portland property must have been "used by the taxpayer as his principal residence." Sec. 1034(a), *supra*. In interpreting the statute we have previously held that the taxpayer's use of the property in question is determinative. "His *use* must be equated with the statutory requirement of 'principal residence.'" *William C. Stolk*, 40 T.C. 345, 350 (1963), affirmed per curiam 326 F. 2d 760 (C.A. 2, 1964). Respondent relies upon the *Stolk* case and contends it controls here.

Actual occupancy of the putative old residence at the time of sale is not necessarily required. *Ralph L. Trisko*, 29 T.C. 515, 518–5–19 (1957). See also *John F. Bayley*, 35 T.C. 288, 296 (1960), which is in accord with *Trisko* as to old residence, but which requires actual occupancy of the putative new residence within the statutory time span. Certainly, there is some merit to the proposition that a house which has never been occupied by the taxpayer cannot qualify as his principal residence. We likewise believe that the facts and circumstances must be exceptional and unusual to permit the conclusion that a principal residence is being used by the taxpayer at the time of sale if he is not in possession thereof and occupying same at that time. Our decision in *Trisko* was expressly limited to the particular facts of that case.

Respondent's regulations, which follow closely the congressional committee reports on the predecessor section of the 1939 Code, indicate that whether or not questioned property qualifies as a principal residence depends upon all the facts and circumstances in each case. H. Rept. No. 586, 82d Cong., 1st Sess., p. 109 (1951); S. Rept. No. 781 (Supp.), 82d Cong., 1st Sess., p. 32 (1951); sec. 1.1034–1(c)(3)(i), Income Tax Regs. Pertinent portions of the above-cited committee reports appear conveniently in *William C. Stolk*, *supra* at 354. Re-

spondent's regulations in effect for the year before us provide in pertinent part as follows:

Sec. 1.1034-1 Sale or exchange of residence.

(c) *Rules for application of section 1034*— * * *

\*     \*     \*     \*     \*     \*     \*

(3) *Property used by the taxpayer as his principal residence.* (i) Whether or not property is used by the taxpayer as his residence, and whether or not property is used by the taxpayer as his principal residence (in the case of a taxpayer using more than one property as a residence), depends upon all the facts and circumstances in each case, including the good faith of the taxpayer. The mere fact that property is, or has been, rented is not determinative that such property is not used by the taxpayer as his principal residence. * * *

Relying primarily on these regulations and the committee reports which inspired them, we allowed nonrecognition in *Trisko* where the petitioner's old residence was not occupied at the time of sale. There, as in the case before us, the taxpayer had rented his house to tenants while he was performing professional services for the Federal Government. At that point the facts in *Trisko* cease being similar to those disclosed by the record here. We will discuss the differences, *infra*.

Petitioner relies heavily upon our decision in *Ralph L. Trisko*, *supra*. Respondent, as mentioned, feels that *William C. Stolk, supra*, governs. Both parties take the approach (at least to an extent) that the present case is *governed* by a prior case. However, as we pointed out initially, each case arising under section 1034 necessitates a factual determination when the question of principal residence is at issue. Such is the mandate of the committee reports, *supra*, and the *Trisko* case itself.

We believe that petitioner's situation is distinguishable from *Trisko* in at least three important particulars. (1) In *Trisko*, the old residence was not put up for sale until the time of the transactions upon which section 1034 operates; in the present case, during nearly 6 years of nonoccupancy, petitioner persisted in his desire and efforts to sell the Portland house. (2) In *Trisko*, actual occupancy, which is usually required to prove the old residency (*William C. Stolk, supra*), was impossible because rent control laws prevented the taxpayer from reoccupying his own dwelling. We were convinced on the evidence that the taxpayer intended to and would have reoccupied his old dwelling if he had not been prevented from doing so by the rent control legislation in force. In the present case the petitioner put his Portland house up for sale before his departure from Portland in 1955 and never relented in his efforts to sell it when the various leases expired. We can only conclude upon the limited record before us that he did not intend to reoccupy the house at any future point in time. (3) In *Trisko*,

we concluded from the evidence that the taxpayer was not holding and using his residence for the production of income but had leased it during a temporary absence while he was employed abroad in order to provide for its care and maintenance. In the present case petitioner apparently rented the house after sales efforts failed because he could not get his asking price; we cannot say without more evidence that this was not a business purpose in light of petitioner's apparent intention not to occupy the house again.

In *Stolk*, 6 years after *Trisko* was decided, we stated that the legislative history of section 1034 and the statute itself did not "indicate that the stated relief will be allowable * * * [whenever] there is reasonable cause for not using the old property as a principal residence." By the phrase "using * * * as a principal residence" we meant actual occupancy. In *Stolk*, the taxpayer moved out of a putative "old residence" in Chappaqua, N.Y., with the definite intention of not living there again or making any further use of the property. He intended to sell the property and use the proceeds for the purchase of other property. He continued to hold the Chappaqua property for 2 years. We held that the vacating of the residential property with the intention of not returning and the holding of the same property for 2 years while looking for new property did not satisfy and were incompatible with the statutory requirement that the property which is sold be used by the taxpayer as his principal residence. We concluded that the taxpayer's actions amounted to an abandonment of his old residence for purposes of section 1034. We are forced to the same conclusion with respect to our present petitioner, but not solely because of the guides for decision-making found in *Stolk*.

In *Stolk*, we adopted a definition of old residency for purposes of section 1034 which places heavy emphasis upon actual use. We quoted as follows from *Dwyer* v. *Matson*, 163 F. 2d 299, 302 (C.A. 10, 1947), citing *Shaeffer* v. *Gilbert*, 73 Md. 66, 20 Atl. 434, 435 (1890), in distinguishing residence from domicile.

It [residence] does not mean * * * one's permanent place of abode, where he intends to live all his days, or for an indefinite or unlimited time; nor does it mean one's residence for a temporary purpose, with the intention of returning to his former residence when that purpose has been accomplished, but means, * * * *one's actual home, * * * whether he intends to reside there permanently, or for a definite or indefinite length of time.* [Emphasis added. *William C. Stolk, supra* at 353.]

In the present case, however, we must conclude that petitioner abandoned the Portland house as his residence. We have already noted three important particulars which distinguish the present situation from *Trisko*. The most important of these distinguishing features is that the present petitioner unrelentingly put his house up for sale,

where not inconsistent with leases, over a 6-year period. We think the listing for sale, combined with nonoccupancy over a period of years, should properly give rise to a presumption of abandonment. Petitioner, who did not testify, has failed to provide any clarifying evidence which would explain why his persistent selling efforts, absent any evidence of an intention ever to return, did not amount to an abandonment. Here, the petitioner's putative residence was unoccupied by him for nearly 6 years, it was rented during this whole period, and the subject of reasonable and persistent selling efforts. Petitioner, upon the stipulated facts before us, has not sustained his burden of showing that respondent's determination was erroneous. We can only conclude and hold that the property in question was not used by petitioner as his principal residence at the time it was eventually sold in 1961.

In addition to the analogies he draws between *Trisko* and his own situation, petitioner raises the further argument that a distinction should be made in the application of section 1034 to civilian taxpayers, on the one hand, and military taxpayers, on the other. Petitioner urges that military personnel in his situation are being deprived of a benefit accorded civilian taxpayers. Specifically, he argues that a military man's absence from the putative old residence is not voluntary, but compelled.[2] The compulsion prevents an abandonment, according to this argument.

We feel the argument would have more merit if petitioner had established an intention to return to use his Portland house and had not repeatedly attempted to sell it over the whole 6-year period. Because in our opinion the persistent selling efforts are entitled to considerable weight, we think it clear that petitioner abandoned the Portland residence not later than 1958, when he came to be stationed in Astoria. This abandonment was well in advance of the span of time during which he purchased the Manitowoc house and sold the Portland house. There is no shred of evidence that petitioner ever con-

---

[2] Clearly, Congress was not unmindful of the difficulties military men might face in complying with the provisions of sec. 1034. Sec. 1034(h) was enacted specifically to ease certain aspects of this hardship, and provides in effect a special rule with respect to the period after the sale of the old residence within which the acquisition of a new residence may result in nonrecognition of the realized gain. The running of the 1-year period (when a new residence is purchased) and the 18-month period (where a new residence is constructed) is suspended if the taxpayer is serving on extended active duty with the Armed Forces. However, the suspension may not extend beyond a date 4 years after the date the old residence was sold.

The relief provision does not aid the present petitioner. His difficulty is not that he failed to conclude both transactions within the statutory time span. Rather, his difficulty lies in the fact that when judged by the standards of residence usually applied under sec. 1034, the Portland house, by May of 1961, no longer qualified as his old principal residence. However, we perceive in the statute and the legislative history no congressional intent that special standards of residence, except as provided, should apply to military men which do not apply to the public at large.

templated or intended to reoccupy or use his Portland house as his residence again.

On the basis of all the evidence before us, giving due weight and carefully sympathetic attention to petitioner's compelled nonoccupancy argument, we must conclude and hold that he abandoned his Portland residence and that it was not his principal residence within the meaning of section 1034 after 1958. The gain realized on its sale in 1961 is therefore not entitled to nonrecognition under that section. We must sustain respondent's determination to that effect.

Due to concessions made by the parties,

*Decision will be entered under Rule 50.*