Arthur R. Barry and Elizabeth M. Barry v. commissioner.
Barry v. Commissioner
Docket No. 2157-69.
United States Tax Court
T.C. Memo 1971-179; 1971 Tax Ct. Memo LEXIS 156; 30 T.C.M. (CCH) 757; T.C.M. (RIA) 71179; July 26, 1971, Filed. Thomas P. Brightwell, University of Denver, Denver, Colo., for the petitioners. John D. Moats, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined a deficiency in the income tax liability of petitioners for the taxable year 1966 in the amount of $1,045.04. The issue is whether gain from the sale of petitioners' house is subject to the nonrecognition provisions of section 1034. [1]
*157 Findings of Fact Some of the facts have been stipulated; they are so found and incorporated herein by this reference. Petitioners, Arthur R. Barry and Elizabeth M. Barry, filed a joint return for the year 1966 with the district director of internal revenue, Denver, Colorado. Petitioners' legal residence on the date of the filing of the petition herein was 5080 East Quincy Avenue, Englewood, Colorado. Petitioner Elizabeth M. Barry is a party herein only by reason of having filed a joint return with her husband, Arthur R. Barry, and the latter will hereinafter be referred to as petitioner. Petitioner is a graduate of the United States Military Academy and the Georgetown University Law Center. He served as a career officer in the United States Army on active duty from 1940 until his retirement as a colonel in the latter part of 1965. On August 15, 1955, petitioner purchased a home in Ferry Farms, Annapolis, Maryland, for the price of $21,500. This home was approximately 17 miles from petitioner's duty assignment at Fort Meade, Maryland, and 25 miles from Baltimore, Maryland. Petitioner occupied the Ferry Farms home as a residence from August 15, 1955, until July of 1960, *158 and he spent $3,743.30 improving and enlarging the home. During the years 1955 to 1960 petitioner actively participated in community activities. Petitioner intended to reside in the Ferry Farms home when he retired from active military duty. His wife, her father, and other relatives were born and lived in Baltimore. Petitioners had many friends and acquaintances living in the area and had easy access to the facilities of the United States Naval Academy which they could have utilized during retirement. During July of 1960 petitioner, then a colonel in the United States Army, was ordered to Germany where he and his family lived in government quarters until he was ordered to Denver, Colorado, during September 1962. Petitioner served in the United States Army at Denver from September 1962 until November 1, 1965, when he formally retired. Petitioner and his family lived in government quarters during his entire period in the Army in Denver. While petitioner was stationed in Germany and Colorado his Ferry Farms home was leased on a year-to-year basis for a rental of $150 to $165 a month. The home was rented on a yearly basis from July 21, 1960, until September 16, 1965, at which time the *159 house was offered for sale in order to obtain funds needed for the construction of a new home for petitioners in Colorado. The house was rented on a month-to-month basis from September 16, 1965, until March 22, 1966, and remained vacant until August 5, 1966, when it was sold. The sale of the house for $30,750 resulted in a realized gain to petitioner in the amount of $7,292.99. During the years 1960 through 1966 petitioner claimed and was allowed income tax deductions for depreciation and expenses attributable to the rental of the Maryland house. Petitioner retired from the United States Army on November 1, 1965, applied for membership in the State Bar of Colorado, and assumed a full-time position as Assistant Dean of the University of Denver Law School. At this time petitioners moved from government quarters into an apartment at 6 South Lane, Englewood, Colorado, which they occupied until November 11, 1966. Petitioners began construction of a new home at 5080 East Quincy Avenue, 759 Englewood, Colorado, during May of 1966. They first occupied this home on November 11, 1966. The cost of the new home was $125,000. In his return for the taxable year 1966 petitioner failed *160 to include the gain from the sale of his Maryland home. Respondent in his notice of deficiency increased petitioner's taxable income to reflect the recognition of this gain. Opinion The issue is whether petitioner sold property used as his principal residence within the meaning of section 1034(a). [2] Under section 1034 the taxpayer does not recognize gain from the sale of property used as his principal residence if he reinvests the proceeds in a new principal residence within the required period of time. Our concern here is *161 whether, based on all the facts and circumstances of the present case, the Ferry Farms home sometime after 1960 had lost its character as that of petitioner's principal residence. If such a change did in fact occur, then the transaction was not within the spirit of nonrecognition provided by section 1034. Respondent contends, first, that the Ferry Farms house was converted to property held for the production of income, and, second, that the house was not used as petitioner's "principal residence." In support of these arguments respondent cites Congressional committee reports relating to section 112(n) of the 1939 Internal Revenue Code, the predecessor of section 1034. The committee reports say in pertinent part that: Whether or not property is used by the taxpayer as his residence, and whether or not property is used by the taxpayer as his principal residence (in the case of a taxpayer using more than one place of residence), depends upon all the facts and circumstances in each individual case, including the bona fides of the taxpayer. The term "residence" is used in contradistinction to property used in trade or business and property held for the production of income. * * * *162 Respondent contends that inasmuch as petitioner claimed the benefit of depreciation and expense deductions for this property the conversion to income-producing property is complete. This is not the law. The fact that petitioner rented the house and claimed deductions for depreciation and maintenance is not determinative of a conversion to "property held for the production of income." Respondent's own regulations, section 1.1034-1(c)(3)(i), so provide. [3]
*163 It should also be noted that Congress has expressly recognized that depreciation may be taken on a principal residence by providing that any depreciation taken on a personal residence is not subject to "recapture" in a transaction to which section 1034 applies. Section 1250(d)(7). Whether or not property is used as a principal residence depends on all the facts and circumstances in each case. Section 1.1034-1(c)(3)(i), Income Tax Regs. "[There] is no requirement that the taxpayer actually occupy the putative old residence at the time of its sale." [4]Robert W. Aagaard, 56 T.C. 191 (1971); Richard T. Houlette, 48 T.C. 350 (1967); and Ralph L. Trisko, 29 T.C. 515 (1957). *164 760 This Court in Trisko, supra[5] in a situation not unlike the one before us held that property retained its character as a principal residence when the taxpayer found it necessary to rent the property upon his receipt of orders for overseas government duty. The Court found that the taxpayer at all times intended to return to the United States and reoccupy the home. The property was leased with a view to obtaining responsible persons to maintain and care for it. The taxpayer claimed and was allowed depreciation and rental expense deductions during a three and one-half year rental period of the principal residence. *165 On the basis of all the facts and circumstances in the present case, including all the bona fides of petitioner, we find that petitioner always considered the Ferry Farms home to be his principal residence and at all times intended to occupy this home. Petitioner rented the home while away under military orders. He rented the home in order to provide for its proper care and maintenance. Petitioner realized no significant profit from the rental. His home was not offered for sale anytime prior to his actual change of principal residence. This change of principal residence was a result of an unexpected change of plans. The record shows that petitioner actually rejected several unsolicited purchase offers during the period he was in the military and absent from his home. The record also shows that this home was the only home owned by petitioner during his 26 year military career which was not sold when petitioner was transferred. Petitioner's position is made even stronger by the fact that he was living in government-provided housing during the five years he was away from his home. Clearly, petitioner could not have abandoned his Ferry Farms home and adopted any of these temporary *166 military quarters as a new principal residence when his retirement from the military was to occur in the very near future. Respondent relies on William C. Stolk, 40 T.C. 345 (1963), affd. per curiam, 326 F. 2d 760 (C.A. 2, 1964); and Richard T. Houlette, supra. These cases are clearly distinguishable from the present case in that this Court, on the evidence, found an abandonment of the old property as the principal residence. In the present case, as already stated, we think the evidence supports a contrary conclusion. Decision will be entered for the petitioners. Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. SEC. 1034. SALE OR EXCHANGE OF RESIDENCE. (a) Nonrecognition of Gain. - If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.↩
3. § 1.1034-1(c)(3)↩ Property used by the taxpayer as his principal residence. (i) Whether or not property is used by the taxpayer as his residence, and whether or not property is used by the taxpayer as his principal residence (in the case of a taxpayer using more than one property as a residence), depends upon all the facts and circumstances in each case, including the good faith of the taxpayer. The mere fact that property is, or has been, rented is not determinative that such property is not used by the taxpayer as his principal residence. For example, if the taxpayer purchases his new residence before he sells his old residence, the fact that he temporarily rents out the new residence during the period before he vacates the old residence may not, in the light of all the facts and circumstances in the case, prevent the new residence from being considered as property used by the taxpayer as his principal residence. * * *
4. This is to be distinguished from the requirement of actual occupancy of the new residence. Rev. Rul. 69-434, 1969-2 C.B. 163; United States v. Sheahan, 323 F. 2d 383 (C.A. 5, 1963); and J. F. Bayley, 35 T.C. 288 (1960). The committee reports of the House Ways and Means Committee and the Senate Finance Committee, which accompanied the bills that became the 1954 Code, state with respect to section 1034: To qualify under this provision the taxpayer must purchase and occupy another residence within 1 year of the date of sale, unless he builds a new residence, in which event the period is 18 months.↩
5. Respondent acquiesced in the Trisko case. It appears respondent has changed his own position. In Rev. Rul. 59-72, 1959-1 C.B. 203, relying on Trisko respondent specifically revoked Rev. Rul. 55-222, 1955-1 C.B. 349. The revoked revenue ruling denied the benefits of sec. 1034 under the following circumstances. [An] officer of the Armed Forces of the United States prior to his retirement owned with his wife a home and occupied it as a principal residence. Because of a change in his post of duty, the taxpayers were forced to give up their occupancy of the residence and rent it for a period of 3 years. * * * Upon retirement of the officer, the rented residence was sold and a new residence was built in another city upon land which the taxpayers owned. Such new residence was then occupied as a principal residence.↩