R. JOE ROGERS and JEAN B. ROGERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rogers v. Commissioner
Docket No. 6400-80.
United States Tax Court
T.C. Memo 1982-718; 1982 Tax Ct. Memo LEXIS 24; 45 T.C.M. (CCH) 318; T.C.M. (RIA) 82718; December 14, 1982. Charles Lee Quaintance, for the petitioners. Jani E. Maurer, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION. TANNENWALD, Chief Judge: Respondent determined a deficiency of $9,329.65 in petitioners' Federal income tax for the taxable year ended December 31, 1976. The sole issue for our decision is whether petitioners are entitled to treat a piece of property sold by them as their "old" principal residence for purposes of postponing gain under I.R.C. section 1034. [1]
*25 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners resided in Highland Falls, N.Y., at the time they filed their petition in this case. All references hereinafter made to petitioner in the singular shall refer to Joe Rogers, who, at all relevant times prior to March 1, 1976, was a career Army officer. On September 15, 1966, while Joe was stationed in the Washington, D.C., area, petitioners purchased a residence at 4200 Lenox Drive, Fairfax, Virginia (the Lenox Drive property) for $35,000. In 1969, shortly after petitioner was informed that he would be transferred that September to Fort Rucker, Alabama, the Rogers began a series of attempts to sell the Lenox Drive property. Petitioners first unsuccessfully listed the Lenox Drive property for sale with a real estate broker, Routh Robbins, for one month at a price of $44,500. The property was then listed for sale with another real estate broker, Tatum Properties, Inc. (Tatum) for two months at the same price. [2] When this listing also proved unsuccessful, Tatum was directed to locate a tenant for the property and to keep the home rented until a suitable sale could be arranged. *26 Pursuant to this agreement Tatum located a tenant who signed a 1-year lease, beginning October 1, 1969, for $300 per month. No further effort was made by Tatum to sell the house in 1969; Tatum never listed the house for sale subject to the lease. However, the Lenox Drive property was placed on the market for two months in 1970, just prior to the expiration of the lease. When no purchaser was located, Tatum renewed the existing tenant's lease for another year. This process occurred year after year; every time a lease was about to expire, Tatum would place the property on the market and then, when no buyer materialized, lease it out. Consequently, the house was rented continuously [3] but placed on the market for sale only periodically. [4]
*27 Tatum's marketing strategy also included annual increases in the listing price of the property to reflect the escalating real estate market in the Washington, D.C., area. [5] Although each price increase reduced the likelihood that the property would be sold, petitioners always accepted Tatum's price suggestions. At some point in 1976, however, petitioners became so disillusioned with Tatum that they listed the Lenox Drive property with United Services Homeowners Association (United). Although the property was listed with United for $68,000, $4,000 below Tatum's price suggestion for that year, petitioners' return would not be diminished because United charged only a flat fee of $400 rather than the 6 1/2 percent commission Tatum charged. The listing *28 with United proved successful. An offer was received and the property was sold, on June 28, 1976, for $66,500. Due to various reductions in the basis of the Lenox Drive property, petitioners' gain on the sale was $40,261.00. Petitioners' house was originally placed on the market because the Rogers did not consider the Washington, D.C., area to be their "home"; Joe's tour of duty at the Pentagon was just another "routine assignment". Although petitioner could have requested a transfer back to the Washington, D.C., area, he never did so. When the Rogers left the Lenox Drive property in September 1969, they had no intention of ever returning to live there. Were petitioner reassigned to Washington, D.C., however, he and his wife could have exercised the Army and Navy clause in the Lenox Drive property lease and regained possession of their old house upon thirty days notice to the tenant. This clause was placed in petitioners' leases on Tatum's own initiative. Petitioners did not request this clause. Between 1969 and 1976, petitioner was stationed in Washington, D.C., Alabama, Vietnam, Pennsylvania, and Texas. While petitioner was stationed in the states, he and his family *29 resided in Government quarters; while petitioner was in Vietnam, he rented a private residence outside Fort Rucker, Alabama, for his family. The only house petitioners owned during these years was the one on Lenox Drive in fairfax, Virginia. In early 1976 petitioner decided to retire from the military and began looking for a job. Petitioner did not seek a job in the Washington, D.C., area; he did, however, search elsewhere and soon was offered a job in Highland Falls, New York. After petitioner received the job offer, the Rogers began looking for a house to purchase. On April 28, 1976, petitioners purchased a residence in Highland Falls. On their 1976 Federal income tax return, petitioners reported a gain of $5,038.48 on the sale of their Lenox Drive residence. This figure was the difference, as computed by the petitioners, between the adjusted sale price of the Lenox Drive property and the cost of the Highland Falls property. On their amended income tax return for 1976, petitioners sought a refund of $1,038.00 based upon an alleged $20,000 expenditure to reconstruct the Highland Falls home prior to their occupancy of it. In the statutory notice of deficiency, the respondent *30 determined that petitioners' $40,261.00 gain on the sale of the Lenox Drive property [6] did not qualify for nonrecognition under section 1034 as the Lenox Drive property had ceased to be their principal residence. OPINION We must decide whether petitioners "abandoned" the Lenox Drive property so that they cannot claim it as their "old residence" for purposes of deferring gain under section 1034. [7] During the taxable year at issue, section 1034(a) provided: If peoperty (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 18 months before *31 the date of such sale and ending 18 months after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence. Whether or not property is used by a taxpayer as his principal residence depends on all the facts and circumstances. Section 1.1034-1(c)(3), Income Tax Regs. In this matter petitioners have the burden of proof. Rule 142(a). Petitioners argue that the facts of the instant case are indistinguishable from those in Clapham v. Commissioner,63 T.C. 505 (1975), in which the taxpayers qualified for section 1034 treatment under the facts and circumstances test even though they vacated their old residence in August 1966 and did not sell it until June 1969. The facts and circumstances of Clapham are distinguishable, however, from those of the instant case. In Clapham, the taxpayers first placed their home on the market in May 1966. Three months later, the Claphams *32 moved out without searching for a tenant. The home was left vacant because the Claphams intended to sell the property as quickly as possible and leaving the house vacant would facilitate its sale. In the spring of 1967, however, the Claphams were forced by financial circumstances to accept an offer to lease the house with an option to purchase. After the lessee vacated the property in the spring of 1968 without exercising the option, the home was again placed on the market and left vacant. In the fall of 1968, financial circumstances again dictated acceptance of an offer to rent the old residence and in December 1968 the house was again vacated. In June of 1969 the house was sold for $32,000 less closing costs; taxpayers' adjusted basis in the property was $26,453. The Court held that the dispositive factors in the case were the substantial periods of time the property was left vacant to facilitate sales efforts and the exigencies of the real estate market which necessitated the rentals, one of which included an option to purchase. In sum, the Court observed, the Claphams' primary motive in leasing the premises was to sell it at the earliest possible moment rather than to hold it *33 for the production of income. See 63 T.C. at 512. Clapham is distinguishable. [8] Unlike the taxpayers in Clapham, who left their home vacant for over half of the time between their move and the sale of the house, petitioners in the instant case rented out their old home more or less continuously. Furthermore, petitioners presented no evidence either that financial circumstances forced them to rent out their home or that the real estate market was depressed for the years in issue. In fact, it was evidently booming: their asking price rose year by year from $44,500 in 1969 to $72,000 in 1976. In short, petitioners simply have not shown that their dominant motive in leasing the premises was anything other than for the "business" purpose of producing income. [9]
*34 Houlette v. Commissioner,48 T.C. 350 (1967), is much closer to the mark. Houlette, a career Coast Guard officer, purchased a home in 1954 while being stationed in Portland, Oregon. He attempted to sell the home in 1955 upon being informed of an impending transfer to Alaska. When Houlette could not secure a sale that would allow him to break even on the transaction, he arranged for his home to be rented upon his departure. A real estate firm kept the home rented until a purchaser was found. Efforts to sell the home were generally limited to the last month or so preceding the expiration of the lease then in effect. The house was finally sold in May 1961. In holding that the taxpayer had "abandoned" the home as his principal residence for section 1034 purposes, the Court observed that "petitioner apparently rented the house after sales efforts failed because he could not get his asking price; we cannot say without more evidence that this was not a business purpose in light of petitioner's apparent intention not to occupy the house again." Houlette v. Commissioner,supra at 356. In the instant case, unlike Clapham where the taxpayers *35 apparently were only attempting to recoup their investment in the "old" residence, petitioners were endeavoring to obtain a substantial profit by constantly increasing their asking price. Under these circumstances, as in Houlette, petitioners' efforts to sell toward the latter part of each lease period are of minimal significance. The similarities between Houlette and the instant case are striking. In each case, a career military officer sold a home 6 years after leaving it and tried to "roll over" the gain under section 1034. More importantly, each taxpayer leased his property out immediately upon his departure rather than let the house remain vacant to facilitate its sale. Finally, each house was placed on the market for only short periods of thime just prior to the termination of the lease then in effect. Although no case determined under the "facts and circumstances" test "controls" a later case, see Clapham v. Commissioner,supra at 508, the Court's holding in Houlette is enlightening. We are convinced, for several reasons, that under the facts and circumstances of the instant case, petitioners abandoned the Lenox Drive property more *36 than 18 months prior to their purchase of the Highland Falls property. First, petitioners had no intention of ever returning to the Lenox Drive property; indeed, Joe Rogers hoped that he would never be stationed in the Washington, D.C., area again. As the Court recognized in Clapham, a clearly manifested intent not to return is a circumstance to take into consideration. Clapham v. Commissioner,supra at 509. Second, unlike the taxpayers in Clapham, petitioners did not keep the house vacant while they attempted to sell it. [10] Instead, the Rogers rented the Lenox Drive property continuously and only placed it on the market when the successive leases were expiring. Finally, petitioners have not shown that either financial circumstances or a poor real estate market forced them to rent the house. From the beginning, petitioners' home was listed at a price which would yield a substantial profit. The Rogers thus exhibited even more of a business purpose then did the Houlettes, who only rented their home after being unable to sell it without incurring a loss. *37 Concededly, the demarcation line in applying Houlette v. Commissioner,supra, and Clapham v. Commissioner,supra, is not precise. But the line must be drawn. As we see it, where there is a manifest intention not to return and a prolonged period of rental, coupled with sporadic attempts to sell at increasing prices, the "special circumstances" which existed in Clapham and in Trisko v. Commissioner,29 T.C. 515 (1957), [11] are lacking herein. Based upon these elements and all the other facts and circumstances revealed by the record herein, we hold that petitioners are not entitled to "roll over" their gain on the sale of the Lenox Drive property under section 1034. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue and all references to Rules are to the Tax Court Rules of Practice and Procedure.↩
2. At one point, petitioner also sent an advertisement for the sale of the property to various military service schools hoping to find a purchaser among the graduates soon to be stationed in the Washington, D.C., area.↩
3. From 1969 until 1976 the house was leased as follows: Period of lease
Rent
October 1, 1969 - September 30, 1970
$300/month
October 1, 1970 - September 30, 1971
$300/month
(Renewal)
October 1, 1971 - September 30, 1972
$300/month
(Renewal)
June 24, 1972 - June 23, 1973
$340/month
December 1, 1973 - May 31, 1974
$325/month
(with option until July 10, 1974)
July 1, 1974 - June 30, 1976
$350/month
It is unclear from the evidence presented whether the house was leased between June 23 and December 1, 1973. Petitioner's testimony to this effect is not conclusive, especially since this is the only time period for which no written lease was produced at trial. We need not resolve this factual question, however, to decide this case. See note 8, infra.↩
4. Between 1970 and 1976, Tatum listed the property for sale for a total of twelve months. See note 5, infra.↩
5. After petitioners moved out, Tatum offered the Lenox Drive property for sale for only two months in 1970; three months in 1971, at a price of $54,000; one month in 1972; two months in 1973, at a price of $65,000; one month in 1974 at a price of $69,000; and three months in 1976 at a price of $72,000. No evidence was presented at trial regarding the price at which the property was offered for sale during either 1970 or 1972.↩
6. in calculating petitioners' gain, respondent correctly reduced petitioners' basis in the Lenox Drive property by the amount of allowable depreciation.Section 1.1016-3(b)(2), Income Tax Regs.↩ Petitioners in fact claimed depreciation on the Lenox Drive property in 1970, 1971, 1973, 1974, and 1976.
7. We use the word "abandoned" in the colloquial sense, recognizing that an actual abandonment does not necessarily preclude the application of section 1034. See Clapham v. Commissioner,63 T.C. 505, 509↩ (1975).
8. Trisko v. Commissioner,29 T.C. 515 (1957), is also distinguishable. See Houlette v. Commissioner,48 T.C. 350, 355-357↩ (1967).
9. We recognize that it may well be better in order to sell a house to have it occupied, albeit by a tenant, rather than to leave it vacant, but we think that the rental pattern in this case is more consistent with a business or investment purpose than simply with an attempt to sell a house because the petitioner was transferred.↩
10. Even if the Lenox Drive property was vacant between June 23 and December 1, 1973, which petitioner deines, see note 3, supra,↩ no attempt was made to sell the property at that time. Consequently, petitioners' sales efforts were clearly distinguishable from the Claphams'.
11. See Stucchi v. Commissioner,T.C. Memo. 1976-242↩.