MICHAEL L. RICHARDS and SANDRA L. RICHARDS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Richards v. Commissioner
Docket No. 11156-91.
United States Tax Court
T.C. Memo 1993-422; 1993 Tax Ct. Memo LEXIS 433; 66 T.C.M. (CCH) 707; September 13, 1993, Filed *433 Decision will be entered under Rule 155. For petitioner: Arthur P. Alstatt. For respondent: Ann M. Murphy. RUWE
RUWE
MEMORANDUM OPINION RUWE, Judge: Respondent determined a deficiency in petitioners' 1988 Federal income tax and additions to tax as follows: Additions to Tax
Deficiency
Sec. 6651(a)(1)
Sec. 6661
$ 29,228
$ 1,335
$ 7,307
After concessions, the issues for decision are: (1) Whether, under section 1034, [1] petitioners must report additional capital gain from the sale of their residence; (2) whether petitioners are liable for the addition to tax for failure to file under section 6651(a)(1); and (3) whether petitioners are liable for the addition to tax for a substantial understatement under section 6661. The parties submitted this case fully stipulated. The stipulation of facts and *434 attached exhibits are incorporated herein by this reference. Petitioners resided in Culver, Oregon, when they filed their petition. On November 7, 1988, petitioners bought a parcel of land in Culver, Oregon (the Culver property), for $ 185,000. [2] The Culver property consisted of 158.3 acres, 128.2 acres of which were irrigable. A barn, corrals, ponds, and a 1,848-square foot manufactured home were also on the property. The Culver property is zoned as A-1, Exclusive Farm Use. For county real estate tax purposes, the Culver property has a farm exemption. In mid-December 1988, petitioners had cattle on the Culver property totaling 23 head. From that time on, the animals grazed on the portion of the land that could be irrigated. On November 10, 1988, petitioners sold their residence in Santa Rosa, California, for $ 225,000, realizing *435 a gain of $ 112,447. On petitioners' 1988 Federal income tax return, filed May 15, 1989, petitioner Michael L. Richards listed his occupation as rancher and indicated that petitioners raised cattle, sheep, and hogs. Petitioners reported a gain on their 1988 return of $ 18,936 from the sale of their Santa Rosa residence. After receiving respondent's notice of deficiency, petitioners filed a timely petition with this Court. Section 1034(a) provides that taxpayers must recognize gain from the sale of their "principal residence" only to the extent the "adjusted sales price" of that residence exceeds the cost of purchasing a new principal residence purchased within 2 years before or after the sale. If part of either property is used for business purposes, only the portion allocated to residential use will be considered as part of the section 1034 calculation. See Wigfall v. Commissioner, T.C. Memo. 1982-171; Beckwith v. Commissioner, T.C. Memo. 1964-254; Grace v. Commissioner, T.C. Memo. 1961-252; H. Rept. 586, 82d Cong., 1st Sess., 436 (1951), 1951-2 C.B. 378; *436 sec. 1.1034-1(c)(3)(ii), Income Tax Regs. There is no dispute that all of petitioners' old residence was residential property. [3] We must decide how much of the cost of purchasing petitioners' new residence, the Culver property, is attributable to residential and business purposes.
Respondent had a qualified appraiser, Scott LaFranchi, appraise the Culver property as of November 7, 1988. He valued the property (excluding personal property) at $ 124,500, and allocated that value as follows: 128.2 acres of Crooked River irrigated land - $ 61,000 27.6 acres of mixed dry pasture and rangeland - 3,500 1.5 acres of (2) improved farmsites - 2,000 1.0 acre of improved homesite - 7,000 The manufacture home unit/dwelling - 41,500 The general purpose barn - 9,500 Petitioners do not stipulate to the correctness of respondent's appraisal. Nor, however, do they appear to dispute the number of acres allocated to each *437 category. Moreover, petitioners relied on respondent's appraisal in arguing that they overpaid for the Culver property. The only evidence of value introduced by petitioners consisted of their answers to respondent's interrogatories. These answers provide little information as to valuation of portions of the property. [4] We find respondent's appraisal to be thorough and informative. In light of this, and the absence of contradictory evidence from petitioners, we accept the values ascertained by respondent's appraiser for the various portions of the Culver property. *438 Respondent's appraiser valued the entire Culver property at $ 124,500. The parties have made concessions regarding the usage of various portions of the Culver property. Petitioners concede that the irrigable portion of the Culver property (128.2 acres, valued by respondent's appraiser at $ 61,000) was nonresidential, or business, property. Respondent agrees that the manufactured home, homesite, and dry pasture (totaling 28.6 acres, valued by respondent's appraiser at $ 52,000) constitute residential property. The statute contemplates a meaning of the term "residence" in its ordinary and commonly understood sense. Beckwith v. Commissioner, supra. Petitioners make no argument that other portions of the property (the barn or farmsites, total value $ 11,500) are properly characterized as residential. Several factors convince us that these portions of the Culver property are best characterized as business property. The Culver property is zoned as "exclusive farm use" and has a farm exemption for county real estate tax purposes. Petitioner Michael L. Richards listed his occupation on his 1988 Federal income tax return as rancher and indicated *439 that petitioners raised cattle, sheep, and hogs. These facts and our interpretation of the statute are consistent with a conclusion that the barn and farmsites were not purchased for residential purposes. Petitioners offered no evidence to the contrary. [5]
To summarize our findings and the concessions of the parties, we find the components of the Culver property and their respective values were as follows: Business Property
Value
Residential Property
Value
Irrigable land
$ 61,000
Dry pasture/rangeland
$ 3,500
Barn
9,500
Homesite
7,000
Farmsites (2)
2,000
Home
41,500
Total value
$ 72,500
Total value
$ 52,000
Respondent argues that because the value of the residential portions of the Culver property was 42 percent of the property's entire *440 value, only that percentage of the $ 185,000 purchase price should constitute the cost of purchasing petitioners' new principal residence. Petitioners argue that the $ 185,000 purchase price of the Culver property constituted a $ 60,500 overpayment. They would allocate none of this overpayment to the business portion of the property and all of it to the residential portion. Petitioners would allocate to the business portion of the property only its fair market value, $ 72,500. There are no decided cases or regulations addressing the proper allocation formula to be used in an overpayment situation. See Wigfall v. Commissioner, T.C. Memo. 1982-171 (hesitating to devise allocation formula in absence of guidance from regulations, cases, or the parties). However, the two formulae proposed by the parties provide us with examples of options available in the type of case at issue. After examining those options, we believe that respondent's method of allocation is the proper one. Section 1034(a) refers to the "cost of purchasing the new residence." (Emphasis added.) It does not refer to fair market value. Petitioners contend that the "cost of purchasing" *441 the non-residential portion of the Culver property is the same as its fair market value and that the portion of actual cost in excess of the fair market value of the non-residential portion is allocable to the residential portion. However, petitioners have provided no evidence suggesting that the "cost of purchasing" the business portion of their property did not include any of the $ 60,500 overpayment. In the absence of such evidence, we see no legal or factual basis for allocating the entire overpayment to the "cost of purchasing" the residential portion of the Culver property. Respondent's method of allocation divides the cost of purchasing the property between the business and residential portions according to their values as a percentage of the entire property's value. This method looks to fair market value only for purposes of determining allocation percentages. Respondent's method allocates the cost of purchasing the Culver property based on those percentages. This Court and others have previously used or accepted allocations based on percentages such as the one used by respondent. See Aagaard v. Commissioner, 56 T.C. 191, 203-204 & n.14 (1971); *442 Poague v. United States, 66 AFTR2d 5825, 90-2 USTC par. 50,539 (E.D. Va. 1990). Respondent's method accords with the statute and strikes the proper balance between the various portions of the property. [6] Thus, petitioners must recognize the full gain of $ 112,447 from the sale of their Santa Rosa residence. Respondent determined that petitioners are liable for a 5-percent addition to tax under section 6651(a)(1). That section provides an addition to tax for the failure to timely file any return, unless it is shown that such failure is due to reasonable cause and not willful neglect. Sec. 6651(a)(1). Petitioners' return was filed on May 15, 1989, 1 month later than *443 the date it was required to be filed, April 15, 1989. Petitioners have the burden of proof to establish reasonable cause. Bebb v. Commissioner, 36 T.C. 170, 173 (1961). Petitioners contend that reasonable cause exists because they relied on their paid tax preparer, whom they had engaged for over 10 years, and to whom they presented their tax information prior to the time required for the filing of their return. The preparer, according to petitioners, was negligent in failing to obtain an extension of time to file. When a taxpayer merely relies upon his accountant for the ministerial act of filing returns and not on the accountant's professional advice or judgment, we will not find reasonable cause. The taxpayer in such circumstance knows of the necessity of filing a return and is charged with the exercise of due care to ensure that the return is filed or that proper extensions are granted. See Inter-American Life Ins. Co. v. Commissioner, 56 T.C. 497, 511 (1971), affd. 469 F.2d 697 (9th Cir. 1972); Wallach v. Commissioner, T.C. Memo. 1982-502; Vocelle v. Commissioner, T.C. Memo. 1968-5. *444 Such is the case here. Therefore, we sustain respondent's determination. Respondent also determined that petitioners are liable for an addition to tax under section 6661. Section 6661(a) provides for an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of tax. Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the tax required to be shown on the return. Sec. 6661(b)(1)(A). The amount of the understatement may be reduced under section 6661(b)(2)(B), for amounts adequately disclosed or supported by substantial authority. Respondent's determination of the addition to tax is presumed correct and petitioners bear the burden of proving otherwise. Rule 142(a). Petitioners' understatement is substantial within the meaning of section 6661(b)(1)(A). Petitioners made no argument with respect to this addition to tax. There is no substantial authority for the position taken on their return. See sec. 6661(b)(2)(B)(i). Nor did petitioners adequately disclose the relevant facts affecting their nonrecognition *445 of gain. See sec. 6661(b)(2)(B)(ii). While they did attach Form 2119, "Sale of Your Home", to their return, this form merely elicits amounts of expenses, gain, and gain postponed due to the sale and purchase of residences. Such information, without more, was insufficient to alert respondent to the potential controversy involved herein; that is, that some of petitioners' new residence was business property, the cost of which might be ineligible for inclusion in the section 1034 calculation. See Lair v. Commissioner, 95 T.C. 484, 494 (1990); Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). The mere declaration of the amount of an item does not entitle a taxpayer to a reduced addition for understatement of tax. Accardo v. Commissioner, 942 F.2d 444, 453 (7th Cir. 1991), affg. 94 T.C. 96 (1990). We sustain respondent's determination of an addition to tax under section 6661. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners paid $ 199,000 for the Culver property plus additional personal property, which had a value of $ 14,000. Thus, petitioners paid $ 185,000 for the improved real property.↩
3. The "adjusted sales price" of petitioners' Santa Rosa residence was $ 225,000. See sec. 1034(b)(1)↩.
4. Respondent formed the interrogatories around the four "Tax Lots" comprising the property (Lots 100, 200, 500, 1100). Petitioners stated that approximately one-quarter of the property (Tax Lot 100) contained almost all its value. As to an allocation of each "Tax Lot" to business and residential use, petitioners stated that there was "no logical way to value business vs. non-business portions and assign a value to them" because this could only be done taking the property "as a whole". Petitioners stated that local land use law required that at least 80 acres had to be purchased in order to reside on the land in question. "Thus, to value the pre-fab house and immediate yard is impossible unless you include enough property to comprise 80 acres." While these assertions may be true, petitioners did not provide a valuation corresponding to them. Indeed, respondent's appraisal seems to accommodate petitioners' objections to the interrogatories in that it values the property as a whole, rather than each Tax Lot separately. Thus, respondent's appraisal stands, for the most part, uncontradicted. Petitioners did state that the value of the corrals on the property was "about $ 5,000" and the value of the barn on the property was "about $ 10,000". Respondent's appraiser valued the barn at $ 9,500, and included the value of the corrals in his valuation of the "improved farmsites", which he valued at $ 2,000.↩
5. Indeed, petitioners do not appear to dispute that these portions of the property are properly characterized as business property. Their primary argument concerns the amount of purchase price allocable to the property as characterized by respondent.↩
6. As respondent states: if respondent is allocating too much to the business portion, he is also allocating too much to the principal residence portion. If the Court were to allocate only a percentage of the fair market value to the business portion of the property, petitioners would receive a windfall.↩